30 Cal.Rptr.3d 726 (2005)
130 Cal.App.4th 1148
In re S.B., a Person Coming Under the Juvenile Court Law.
San Bernardino County Department Of Children's Services, Plaintiff and Respondent,
v.
Jeannie V., Defendant and Appellant.
No. E036823.
Court of Appeal, Fourth District, Division Two.
June 30, 2005.
As Modified July 28, 2005.
Review Denied October 12, 2005.
*727 Linda S. Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.
*728 Ronald D. Reitz, County Counsel, and Ramona E. Verduzco, Deputy County Counsel, for Plaintiff and Respondent.
Konrad S. Lee, under appointment by the Court of Appeal, Riverside, for Minor.
Certified for Partial Publication.[*]

OPINION
RICHLI, J.
Jeannie V. (mother) appeals from an order terminating parental rights to her daughter, S.B. At the preceding hearing, at which the juvenile court set the termination hearing, the social worker learned for the first time that S.B. had Indian ancestry. At that point, the social worker attempted to give notice pursuant to the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (the ICWA). Although the notice did not comply fully with all applicable requirements, it did reach the Cherokee Nation (the Tribe), and the Tribe did respond. As a result, the mother and S.B. became members of the Tribe; the Tribe intervened; and, with the Tribe's approval, S.B. was placed with Indian foster parents who wanted to adopt her.
In the published portion of this opinion, we consider the mother's contention that the juvenile court and the social worker complied only belatedly with their duty under the ICWA to inquire into S.B.'s Indian ancestry. We will reject this contention for three reasons. First, the mother waived it by failing to raise it at the first opportunity; although a parent cannot waive an Indian tribe's rights under the ICWA, the parent can waive his or her own rights. Second, the fact that the social worker's reports stated that the ICWA did not apply, along with the fact that the ICWA check boxes on the petition were left blank, constituted sufficient evidence that an inquiry was made. Third, at least as to the mother, the asserted error was harmless. The detention hearing did not involve a foster care placement within the meaning of the ICWA; hence, the substantive provisions of the ICWA did not apply. The jurisdictional/dispositional hearing did involve a foster care placement, and we may assume the review hearings did as well, but there is no reasonable probability that, if the substantive provisions of the ICWA had been applied, the mother would have enjoyed a more favorable result.
In the unpublished portion of this opinion, we find no other error. Accordingly, we will affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND
When this dependency proceeding was originally filed, S.B. was two, going on three. She is now five.
On November 7, 2002, because both of her parents were found to be under the influence of drugs, and because of hazardous conditions in the home, S.B. was detained. On November 8, 2002, the San Bernardino County Department of Children's Services (the Department) filed a dependency petition concerning her. Initially, she was placed in a group foster home. Within weeks, however, she was moved to a foster family home.
Both the report for the detention hearing and the report for the jurisdictional/dispositional hearing stated, "The Indian Child Welfare Act does not apply."
On December 2, 2002, at the jurisdictional/dispositional hearing, the parents submitted on the social worker's reports. The juvenile court found jurisdiction based on failure to protect. (Welf. & Inst.Code, § 300, subd. (b).) It ordered reunification services.
On January 14, 2004, at the 12-month review hearing, the juvenile court terminated *729 reunification services and set a hearing pursuant to Welfare and Institutions Code section 366.26 (section 366.26 hearing). At that same hearing, however, the social worker learned (apparently from the mother, but possibly from the maternal grandmother, who was at the hearing) that S.B. had Indian heritage.
On February 2, 2004, after obtaining the necessary information from the maternal grandmother, the social worker mailed a form SOC 318 to the Bureau of Indian Affairs (the BIA). That form would have provided information about S.B.'s ancestry. There is no indication, however, that the social worker sent a form SOC 319, which would have provided notice of the dependency proceeding. (See In re C.D. (2003) 110 Cal.App.4th 214, 223-226, 1 Cal. Rptr.3d 578.)
On February 18, 2004, the juvenile court held a "notice review" hearing. The maternal grandmother appeared and stated that she was a member of the Tribe. Counsel for the Department indicated that it was going to give notice pursuant to the ICWA.
Meanwhile, the Tribe responded to the notice already sent to the BIA. In a letter dated February 20, 2004, it confirmed that the maternal grandmother was a member of the Tribe and that S.B. was eligible for membership. A membership application was enclosed. The letter also stated: "The Cherokee Nation is not empowered to intervene in this matter unless the child/children or eligible parent(s) apply and receive membership."
On June 18, 2004, the mother filed a "motion to invalidate jurisdictional, dispositional, 366.21(e) and 366.21(f) findings and orders for failure to comply with the Indian Child Welfare Act and Welfare & Inst. Code section 360.6." (Capitalization altered.)
On July 2, 2004, the prospective adoptive parents indicated that they had changed their minds about adoption; they asked that S.B. be removed from their home.
On or about July 15, 2004, both the mother and S.B. became members of the Tribe. On July 27 (or 29), 2004, the Tribe filed a "Notice of Intervention." (Capitalization altered.)
On August 9, 2004, S.B. was placed with a family that wanted to adopt her. The prospective adoptive mother had both Cherokee and Navajo ancestry; the prospective adoptive father had both Cherokee and Cheyenne ancestry. Although not members of any tribe, they were "actively involved in cultural events" such as powwows. The Tribe took the position that, although it would have preferred a placement in the home of members of the Cherokee Nation, S.B.'s current placement was in her best interest because she "has adjusted to her community [and] school environment, and she will be raised attending cultural events with her foster/adoptive parents...."
On August 26, 2004, the juvenile court denied the mother's motion to invalidate prior orders. It then proceeded to hold a contested section 366.26 hearing. For purposes of the ICWA, it specifically found, beyond a reasonable doubt, that continued custody of the child by the parents was likely to cause serious emotional or physical damage to the child (see 25 U.S.C. § 1912(f)) and, by clear and convincing evidence, that active efforts had been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family (see 25 U.S.C. § 1912(d)). It also found that S.B. was adoptable and that none of the exceptions to termination of parental rights applied. It therefore terminated parental rights.
*730 The mother filed a timely notice of appeal. The Tribe has been given notice of the appeal, including copies of all of the briefs. It has notified us, however, that it does not wish to participate in the appeal.

II

FAILURE TO INQUIRE INTO S.B.'S INDIAN ANCESTRY
The mother contends the juvenile court should have granted her motion to invalidate previous findings and orders because the juvenile court and the Department had failed to inquire into whether S.B. was an Indian child.

A. Statutory Background.

Among the stated purposes of the ICWA are "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture...." (25 U.S.C.1902.)
In general, the ICWA applies to any state court proceeding involving the foster care or adoptive placement of, or the termination of parental rights to, an Indian child. (25 U.S.C. §§ 1903(1), 1911(1)-(3), 1912-1918, 1920, 1921.) "Indian child" is defined as a child who is either (1) "a member of an Indian tribe" or (2) "eligible for membership in an Indian tribe and ... the biological child of a member of an Indian tribe...." (25 U.S.C.1903(4).)
We are concerned with three types of ICWA provisions, which we will call the "notice provisions," the "substantive provisions," and the "enforcement provision."
First, under the notice provisions, if "the court knows or has reason to know that an Indian child is involved," the social services agency must "notify ... the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a).) "If the identity or location of ... the tribe cannot be determined," the notice need only be given to the BIA. (Ibid.) "No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by ... the tribe or the [BIA]." (Ibid.)
Second, under the substantive provisions, the Indian child's tribe has "a right to intervene at any point in the proceeding." (25 U.S.C.1911(c).) As a condition of any foster care placement or termination of parental rights, the court must find "that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." (25 U.S.C. § 1912(d).) The court also must find, based at least in part on the "testimony of qualified expert witnesses," that "the continued custody of the child by the parent ... is likely to result in serious emotional or physical damage to the child." (25 U.S.C. §§ 1912(e), (f).) For a foster care placement, this must be proven "by clear and convincing evidence." (25 U.S.C. § 1912(e).) For termination of parental rights, it must be proven "beyond a reasonable doubt." (25 U.S.C. § 1912(f).)
Third and finally, under the enforcement provision, on the petition of the Indian child, a parent from whose custody an Indian child has been removed, or the Indian child's tribe, "any court of competent jurisdiction" must invalidate any "action for foster care placement or termination of parental rights" that violated the notice provision or any of the substantive provisions. (25 U.S.C. § 1914.)
*731 A host of subsidiary requirements have been adopted to implement, interpret, and enlarge upon this statutory language. These requirements are embodied in: (1) federal regulations (25 C.F.R. § 23.1 et seq.), which are binding in all federal and state courts by virtue of the Supremacy Clause (see Olszewski v. Scripps Health (2003) 30 Cal.4th 798, 814, 135 Cal.Rptr.2d 1, 69 P.3d 927); (2) federal "Guidelines for State Courts" (Guidelines) (44 Fed.Reg. 67584 (Nov. 26, 1979)), which by their terms are "not intended to have binding legislative effect" (ibid.); (3) a state rule of court (Cal. Rules of Court, rule 1439); (4) several "mandatory" state Judicial Council forms (JV-130, JV-135; see also Gov. Code, § 68511); and (5) sections 31-515 and 31-520 of the state Child Welfare Services Manual of Policies and Procedures (CWS Manual)[1] (see In re Asia L. (2003) 107 Cal.App.4th 498, 506, 132 Cal.Rptr.2d 733).
For example, the ICWA notice provisions, by their terms, apply if "the court knows or has reason to know that an Indian child is involved...." (25 U.S.C. § 1912(a).) The ICWA does not define "reason to know." Neither do the controlling federal regulations. (See 25 C.F.R. § 23.11(a) (2005).) The Guidelines, however, require "the state court [to] make inquiries to determine if the child involved is a member of an Indian tribe or if a parent of the child is a member of an Indian tribe and the child is eligible for membership in an Indian tribe." (Guidelines, § B.5.a, 44 Fed.Reg. 67588 (Nov. 26, 1979), italics added.) The state rule of court provides that "[t]he court [and] the county welfare department ... have an affirmative duty to inquire whether a child for whom a [dependency] petition ... is to be, or has been, filed is or may be an Indian child." (Cal. Rules of Court, rule 1439(d).) Judicial Council form JV-135, effective January 1, 2005, provides for a parent to indicate whether the child is or might be an Indian child.
The CWS Manual, finally, provides that "the social worker shall: [¶] ... [i]dentify in the petition that the child is or may be an Indian child as defined by the ICWA." (CWS Manual, § 31-515.) "To make such a determination, the social worker shall ask the child, his parent or custodian whether the child is or may be a member of an Indian tribe, or whether the child identifies himself/herself as a member of a particular Indian organization." (CWS Manual, § 31-515.111.) If the child's Indian status cannot be determined before the first hearing, the social worker must "[a]dvise the court of all information which indicates that the child may be an Indian child," "[a]dvise the court of all efforts made to establish the child's status as an Indian child," and "[c]ontinue contacts with the BIA until the question of the child's status as an Indian child ... has been resolved and the resolution is documented in the case record for future reference." (CWS Manual, § 31-515.2.)
The ICWA expressly permits "[s]tate or [f]ederal law [to] provide[ ] a higher standard of protection ... than the rights provided under" the ICWA. (25 U.S.C. § 1921.) This simply means, however, that the ICWA does not preempt such higher state standards. It does not incorporate such higher state standards into the ICWA itself. The enforcement provision, by its terms, applies only to violations "of sections 1911, 1912, and 1913 of this title" (25 U.S.C. § 1914); it does not purport to address the penalty for other violations of federal or state law.

B. Analysis.

1. Waiver.

"As a general rule, a party is precluded from urging on appeal any point *732 not raised in the trial court. Any other rule would permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware. [Citation.]" (In re Richard K. (1994) 25 Cal.App.4th 580, 590, 30 Cal.Rptr.2d 575.) Similar principles apply to a belated attempt to raise a point in the trial court. For example, "[t]he rule is well settled that when at any time during trial a party or his counsel becomes aware of facts constituting misconduct or irregularity in the proceedings of the jury, he must promptly bring such matters to the attention of the court, if he desires to object to it, or he will be deemed to have waived the point as a ground for a motion for a new trial. [Citations.]" (Weathers v. Kaiser Foundation Hospitals (1971) 5 Cal.3d 98, 103, 95 Cal. Rptr. 516, 485 P.2d 1132.)
Here, the mother raised her present contention for the first time by filing a motion to invalidate prior orders pursuant to the enforcement provision of the ICWA. (25 U.S.C. § 1914.) Previously, she had appeared (or waived her appearance) at every hearing that she now claims was held without the notice required by the ICWA. Nevertheless, she failed to object on ICWA grounds until those hearings were over and the section 366.26 hearing loomed. She does not offer any excuse for her previous failure to object; for example, she does not claim that she was unaware of her own Indian ancestry. We conclude that she thereby forfeited any right she might otherwise have had to invoke the enforcement provision.
Admittedly, it has been held  including by this court-that a parent does not necessarily waive an ICWA notice issue by failing to raise it below. (In re Suzanna L. (2002) 104 Cal.App.4th 223, 231-232, 127 Cal.Rptr.2d 860 [Fourth Dist., Div. Two]; In re Jennifer A. (2002) 103 Cal.App.4th 692, 706, 127 Cal.Rptr.2d 54; Dwayne P. v. Superior Court (2002) 103 Cal.App.4th 247, 257-258, 126 Cal.Rptr.2d 639; In re Samuel P. (2002) 99 Cal.App.4th 1259, 1267-1268, 121 Cal.Rptr.2d 820; In re Marinna J. (2001) 90 Cal.App.4th 731, 738-739, 109 Cal.Rptr.2d 267; In re Desiree F. (2000) 83 Cal.App.4th 460, 471-472, 99 Cal. Rptr.2d 688.) These cases, however, reason that "`[t]he notice requirements serve the interests of the Indian tribes "irrespective of the position of the parents" and cannot be waived by the parent. [Citation.]' [Citation.]" (Suzanna L., at pp. 231-232, 127 Cal.Rptr.2d 860, quoting Samuel P., at p. 1267, 121 Cal.Rptr.2d 820, quoting In re Kahlen W. (1991) 233 Cal. App.3d 1414, 1421, 285 Cal.Rptr. 507.)
Once the child's tribe has appeared and has not asked, on its own behalf, that any prior actions be invalidated, this rationale does not apply. The parent has an independent right to invalidate prior actions, but there is every reason to hold that this can be waived. As in other cases, "... `[i]t would seem ... intolerable to permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware and thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not.'" (Caminetti v. Pac. Mutual L. Ins. Co. of California (1943) 22 Cal.2d 386, 392, 139 P.2d 930, quoting Lindsay-Strathmore Irr. Dist. v. Superior Court of Tulare County (1920) 182 Cal. 315, 338, 187 P. 1056 (conc. opn. of Onley, J.).)
While the social worker and the trial court have a duty to inquire into the child's Indian ancestry, a parent has superior access to this information. Moreover, a parent has a right to counsel, including appointed counsel, if necessary (Welf.Inst. Code, 317, subds.(a), (b)), who has not only *733 the ability but also the duty to protect the parent's rights under the ICWA. As the trial court in this case observed, if a parent has Indian ancestry, "I would think as officers [of] the court, counsel for parents would have [a] similar interest [in] bring[ing] that information forward at the earliest possible time."
We recognize that, in a proceeding for foster care placement of, or termination of parental rights to, an Indian child, a parent's failure to object does not waive the substantive provisions (as opposed to the notice provisions) of the ICWA unless "the court is satisfied that the [parent] has been fully advised of the requirements of the Act, and has knowingly, intelligently, and voluntarily waived them." (Cal. Rules of Court, rule 1439(i)(2), & (4), (j)(2), (m)(2), & (4); see In re Jennifer A., supra, 103 Cal.App.4th at pp. 707-708, 127 Cal. Rptr.2d 54.) Here, however, S.B. was not yet an Indian child. The substantive provisions of the ICWA did not yet apply. There is no state rule of court similarly restricting waiver of the notice provisions, which are the source of the duty of inquiry.
Accordingly, the mother could and did waive the supposed failure to inquire concerning S.B.'s Indian ancestry.

2. The Sufficiency of the Evidence.

Separately and alternatively, the record indicates that the Department did inquire as to whether S.B. was an Indian child. In re Aaliyah G. (2003) 109 Cal. App.4th 939, 135 Cal.Rptr.2d 680 is practically on point. There, the petition application was marked "No" to indicate that the child did not have Indian heritage. All subsequent reports stated that the ICWA did not apply. (Id. at p. 942, 135 Cal. Rptr.2d 680.) On appeal, the father argued that the juvenile court and the social services agency had "failed to satisfy their affirmative duty to inquire as to ICWA's applicability." (Id. at p. 941, 135 Cal. Rptr.2d 680.) The appellate court disagreed: "Checking the No box suggests that an inquiry as to Aaliyah's heritage was made. There is no indication to the contrary. The court had no obligation to make a further or additional inquiry absent any information or suggestion that the child might have Indian heritage." (Id. at p. 942, 135 Cal.Rptr.2d 680.) It concluded: "Based on the record, there is sufficient evidence that an inquiry was made as to whether Aaliyah is an Indian child." (Ibid.)
Here, the Judicial Council form petition, JV-100 (Jan. 1, 1999 rev.), provided two check boxes for indicating the child's Indian status. One box meant: "Child may be a member of, or eligible for[ ] membership in[,] a federally recognized Indian tribe." The other meant: "Child may be of Indian ancestry." Neither was checked. The report for the detention hearing stated, "The Indian Child Welfare Act does not apply." The report for the jurisdictional/dispositional hearing likewise stated, "The Indian Child Welfare Act does not apply." The mother appeared in court, with her appointed counsel, but she never objected to these statements. Indeed, at the jurisdictional/dispositional hearing, she submitted on the reports.
From the affirmative representation that the ICWA did not apply, it is fairly inferable that the social worker did make the necessary inquiry. The only even arguable distinction between Aaliyah G. and this case is that there, a box indicating that the ICWA did not apply was checked, whereas here, boxes indicating that the ICWA did apply were not checked. The form in this case, however, did not provide a box for indicating that the ICWA did not apply. As the Department aptly argues, the "slight difference in the [forms] does *734 not undermine the legal rationale." The mother did not introduce any contrary evidence. Although her counsel argued that the social worker had not made any inquiry, the mother did not submit a declaration or otherwise testify to this effect.
The mother could argue that the social worker evidently did not make any inquiry to the maternal grandmother, because if she had, she would have learned that S.B. had Indian ancestry. However, as long as the social worker did inquire of the parents, and as long as the parents failed to provide any information requiring follow-up, she had no further duty of inquiry. The Guidelines require "the state court [to] make inquiries...." (Guidelines, § B.5.a, 44 Fed.Reg. at p. 67588.) The court could hardly make inquiries of persons not parties to the proceeding. Although the state rule of court imposes a duty of inquiry on both the court and the social services agency (Cal. Rules of Court, rule 1439(d)), the Judicial Council form designed to implement this rule indicates that the initial inquiry need only be made to the parents. As the Judicial Council writes the rules of court, its interpretation seems definitive. Even the CWS Manual merely requires the social worker to "ask the child [and] his parent or custodian...." (CWS Manual, § 31-515.111.)
We conclude that there was sufficient evidence that the juvenile court and the Department met their duty of inquiry.

3. Harmless Error.

Finally  and, again, separately and alternatively  the asserted error was harmless. An ICWA notice violation may be held harmless when the child's tribe has actually participated in the proceedings (see In re Kahlen W., supra, 233 Cal. App.3d at p. 1424, 285 Cal.Rptr. 507)[2] or when, even if notice had been given, the child would not have been found to be an Indian child, and hence the substantive provisions of the ICWA would not have applied (ibid.; In re Antoinette S. (2002) 104 Cal.App.4th 1401, 1411-1413, 129 Cal. Rptr.2d 15). Moreover, any failure to comply with a higher state standard, above and beyond what the ICWA itself requires, must be held harmless unless the appellant can show a reasonable probability that he or she would have enjoyed a more favorable result in the absence of the error. (Cal. Const., art. VI, 13; People v. Watson (1956) 46 Cal.2d 818, 836, 299 P.2d 243.)
As already noted, to be an Indian child, a child must be either (1) a member of an Indian tribe, or (2) both eligible for membership in an Indian tribe and the biological child of a member of an Indian tribe. (25 U.S.C.1903(4).) Neither the mother nor S.B. was a member of the Tribe until July 2004. Hence, at the hearings up to and including the 12-month hearing, S.B. was not an Indian child. As soon as S.B. did become an Indian child, the Tribe intervened. Thereafter, the juvenile court complied with all of the substantive provisions of the ICWA. Accordingly, the mother essentially argues that the failure to inquire was prejudicial because it prevented S.B. from becoming an Indian child  and hence it prevented the substantive provisions of the ICWA from applying  earlier.

a. The Effect of the Asserted Error at the Detention Hearing.

Preliminarily, we do not believe that all of the provisions of the ICWA apply to a detention hearing. We recognize that the ICWA defines a "foster care placement" as "any action removing an Indian child from *735 its parent ... for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent ... cannot have the child returned upon demand, but where parental rights have not been terminated[.]" (25 U.S.C. § 1903(1)(i).) A detention hearing might appear to fit this description. Such a construction, however, would result in absurdities.
In most cases, a detention occurs only because a social worker has determined that the child cannot be left in a parent's custody without endangering the child's health or safety. (Welf. & Inst. Code, § 306, subds. (a)(2), (b); see also Welf. & Inst.Code, §§ 305, 306, subd. (a)(1).) It is an emergency removal; it results in an emergency placement. The detention hearing then provides for judicial review of the detention. Most provisions of the ICWA clearly are not intended to apply to such emergency removals or placements. For example, under California law, a detention hearing must be held within 48 hours, plus one court day, after the child is detained; otherwise, the child must be returned to the parents. (Welf. & Inst.Code, §§ 313, 315; see also Welf. & Inst.Code, §§ 215, 272, subd. (a)(1).) If the notice provisions of the ICWA applied, however, such an emergency hearing could not be held until at least 10 days after the parent and the tribe received notice by registered mail.
Moreover, in an emergency, providing services typically is not a reasonable alternative to removal. Here, for example, the family had no prior referrals; it came to the attention of the Department when both parents were arrested, and the Department had no option other than to take S.B. into custody. Under the substantive provisions of the ICWA, however, the Department would have to show that it made "active efforts" to prevent removal. Moreover, if it could not make such a showing, the juvenile court would have to return the child to the parents, even if that meant placing the child back into imminent danger.
The only provision of the ICWA that is demonstrably intended to apply to an emergency placement provides, as relevant here: "Nothing in this subchapter shall be construed to prevent the emergency removal of an Indian child who is a resident of or is domiciled on a reservation, but temporarily located off the reservation, from his parent ... or the emergency placement of such child in a foster home or institution, under applicable State law, in order to prevent imminent physical damage or harm to the child. The State authority, official, or agency involved shall insure that the emergency removal or placement terminates immediately when such removal or placement is no longer necessary to prevent imminent physical damage or harm to the child and shall expeditiously initiate a child custody proceeding subject to the provisions of this subchapter, transfer the child to the jurisdiction of the appropriate Indian tribe, or restore the child to the parent or Indian custodian, as may be appropriate." (25 U.S.C.1922.)
Read literally, this would appear to apply only to "an Indian child who is a resident of or is domiciled on a reservation, but temporarily located off the reservation...." If this reading were correct, however, the statute would not then go on to allow the social services agency to initiate a child custody proceeding or to transfer the child to the jurisdiction of the appropriate Indian tribe; an Indian tribe has exclusive jurisdiction over any child custody proceeding involving an Indian child who is a resident of or domiciled on a reservation. (25 U.S.C. § 1911(a).) Moreover, *736 it would make no sense to give a state more power to make an emergency placement of an Indian child who lives on a reservation than one who lives off the reservation. Thus, as the legislative history confirms, Congress intended this section to apply to emergency removals and placements of all Indian children. (H.R.Rep. No. 95-1386, 2d Sess., p. 25 (1978), reprinted in 1978 U.S.Code Cong. & Admin. News, pp. 7530, 7548.)
As far as we can tell, only two courts have considered whether a detention hearing is a "foster care placement" within the meaning of the ICWA. Both have held it is not. (In the Matter of the Welfare of J.A.S. (Minn.Ct.App.1992) 488 N.W.2d 332, 334-335; State ex rel. Juvenile Department of Multnomah County v. Charles (1984) 70 Or.App. 10, 13, 14, fn. 2, 688 P.2d 1354["[e]mergency removal ... is initially purely a state law matter and is not subject to all of the ICWA requirements"].) For the reasons we have discussed, we agree. It follows that, in this case, the failure to inquire sooner into S.B.'s Indian ancestry could not have had an effect on the detention hearing.

b. The Effect of the Asserted Error at the Jurisdictional/Dispositional Hearing.

This brings us to the jurisdictional/dispositional hearing. At that hearing, the juvenile court for the first time formally removed S.B. from her parents' custody (Welf. & Inst.Code, § 361, subd. (c)) and placed her in the custody of the Department. This vested the Department with the authority to place her in foster care. (Welf. & Inst.Code, § 361.2, subd. (e).) The juvenile court also approved her existing placement. (See Welf. & Inst.Code, §§ 361, subd. (e), 366, subd. (a)(1)(A).) Thus, the jurisdictional/dispositional hearing did effect a foster care placement within the meaning of the ICWA.
The applicable substantive provisions of the ICWA are twofold. First, before making a foster care placement, the juvenile court would have had to find, based on clear and convincing evidence, "that active efforts ha[d] been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts ha[d] proved unsuccessful." (25 U.S.C. § 1912(d); see also In re Michael G. (1998) 63 Cal.App.4th 700, 709-712, 74 Cal. Rptr.2d 642.)
Under state law, however, the juvenile court was already required to "make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home...." (Welf. & Inst. Code, § 361, subd. (d).) It has been said that "the standards in assessing whether `active efforts' were made to prevent the breakup of the Indian family, and whether reasonable services under state law were provided, are essentially undifferentiable." (In re Michael G., supra, 63 Cal.App.4th at p. 714, 74 Cal.Rptr.2d 642; see also Letitia V. v. Superior Court (2000) 81 Cal. App.4th 1009, 1016, 97 Cal.Rptr.2d 303.) Certainly they were undifferentiable as applied to this case. Both parents submitted on the social worker's reports. Accordingly, the juvenile court found that such reasonable efforts had been made. The mother did not appeal this finding, and it is now res judicata. (In re Matthew C. (1993) 6 Cal.4th 386, 393, 24 Cal.Rptr.2d 765, 862 P.2d 765.) On this record, we see no reason to suppose that the juvenile court had been asked to find whether "active efforts" had been made, rather than "reasonable *737 efforts," it would have made a different finding.
The mother notes that, under California Rules of Court, rule 1439(i)(4)(B), "[e]fforts to provide services shall include attempts to utilize the available resources of extended family members, the tribe, Indian social service agencies, and individual Indian caregivers."[3] She argues that, if S.B. had been an Indian child, she herself would have been entitled to different or additional services. The family's problems, however, consisted of drug abuse and hazardous conditions in the home. There is no reason to suppose that Indian services would have been any more successful in eliminating these problems than non-Indian services were. Ultimately, at the section 366.26 hearing, the Department's expert testified, and the juvenile court found, that the active efforts required by the ICWA had been made.
Second, before making a foster care placement, the juvenile court would have had to find, based at least in part on the testimony of a qualified expert witness, that parental custody was likely to result in serious emotional or physical damage to the child. (25 U.S.C. §§ 1912(e).) Again, however, as a matter of state law, it had to find, by clear and convincing evidence, the existence of one of several specified imminent threats to S.B.'s well-being. (Welf. & Inst.Code, § 361, subd. (c).) Both parents, again, submitted on the social worker's reports. Accordingly, the juvenile court found that: "There is a substantial danger to the physical health, safety, protection, or physical or emotional well-being of [S.B.] or would be if [S.B.] were returned home...." When an expert witness ultimately did testify, at the section 366.26 hearing, she opined that returning S.B. to her parents' custody was likely to result in serious emotional or physical damage because they were still using drugs. Thus, there is no reason to suppose that, if an expert witness had testified at the jurisdictional/dispositional hearing, the juvenile court would have made a different finding.

c. The Effect of the Asserted Error at the Six- and 12-month Review Hearings.

The six- and 12-month review hearings did not result in S.B. being removed from a parent and placed in a foster home or institution. (See 25 U.S.C. § 1903(l)(i).) She simply remained in the same foster care placement made previously at the jurisdictional/dispositional hearing. Nevertheless, we may assume, without deciding, that these review hearings involved a foster care placement within the meaning of the ICWA. (See In re Bridget R. (1996) 41 Cal.App.4th 1483, 1520-1521, fn. 24, 49 Cal.Rptr.2d 507, fn. 24.)
If so, the juvenile court was required to make both "active efforts" and "serious damage" findings. Nevertheless, at the six-month review hearing, both parents once again submitted on the social worker's report. At the 12-month hearing, the mother's counsel conceded that "the social worker's representations are very close to accurate [and] at the present time she isn't able to take this child into her home." Both times, the juvenile court found, as state law required, that reasonable services had been offered or provided and that returning S.B. to her parents would create a substantial risk of detriment. (Welf. & Inst.Code, § 366.21, subds. (e), (f).) Thus, it would appear that, if "active *738 efforts" and "serious damage" findings had been required, the juvenile court would have made them.

III[**]

IV

DISPOSITION
The order appealed from is affirmed.
We concur: RAMIREZ, P.J., and KING, J.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.
[1] Available at (as of June 30, 2005).
[2] Here, for example, the mother asserts (in a single sentence) that the notice given was inadequate. Any such error, however, is moot and/or harmless, because the Tribe did intervene and did participate below.
[3] The Guidelines contain a similar provision. (Guidelines § D.2, 44 Fed.Reg. at p. 67592.)
[**] See footnote *, ante.