IN RE INTEREST OF ENRIQUE P. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. SHANNON P.,
APPELLANT, AND OMAHA TRIBE OF NEBRASKA,
INTERVENOR-APPELLEE.
709 N.W.2d 676

Filed January 31, 2006.   No. A-05-606.

454

Thomas C. Riley, Douglas County Public Defender, and Mona L. Burton for appellant.

Stuart J. Dornan, Douglas County Attorney, and Nicole Brundo Goaley for appellee.

INBODY, Chief Judge, and IRWIN and MOORE, Judges.

MOORE, Judge.

## INTRODUCTION

Shannon P. appeals an order by the separate juvenile court of Douglas County which denied (1) a petition to invalidate previous court orders and (2) a motion to dismiss. The petition and motion were based on an alleged failure to comply with both the federal and the state implementations of the Indian Child Welfare Act (ICWA). We affirm.

## BACKGROUND

On June 11, 2003, the State filed a petition in the separate juvenile court of Douglas County alleging that Shannon's four children, Enrique P. (born June 29, 1993), Carina P. (born December 11, 1995), Christian P. (born November 5, 1999), and Christianna P. (born December 20, 2001), were children within the purview of Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 2002). The petition alleged that the four children lacked proper parental care by reason of the faults or habits of Shannon. The petition stated that Shannon was currently incarcerated, making her unable to care for the children; that the family relative who had been caring for the children was unable to care for the children any longer; and that due to the facts alleged above, the children were at risk for harm.

In addition to the petition, the State also filed a motion for temporary custody that same day. The motion for temporary custody was based on an "Affidavit for Removal of Minor Child(ren) From Parent or Custodial Home" made by an Omaha, Nebraska,

police officer. The affidavit stated that the officer had received a radio call to go to a particular address and check on the well-being of four children. When the officer arrived, she spoke with the above-mentioned relative, who stated that Shannon was in jail and that the relative could no longer care for Shannon's four children. The officer then placed the children in temporary foster care. An order placing the children's immediate custody with the Nebraska Department of Health and Human Services (DHHS) was also entered on June 11, 2003. The children have remained in the custody of DHHS throughout the case.

A detention hearing was held on June 18, 2003; Shannon was advised of her rights, an attorney was appointed to represent her, and the matter was continued. On June 25, the State filed an amended petition, which alleged that one child was a registered member of the Omaha Tribe and that the other three children were eligible for enrollment with the Omaha Tribe. The petition also included new allegations against Shannon—that her use of alcohol or controlled substances placed the children at risk of harm and that Shannon did not have safe, stable, and independent housing to provide to the children. The continued detention hearing was held on June 26. Shannon did not appear, but was represented by counsel. The continued detention proceedings are not included in the bill of exceptions, however, and thus, it is not clear whether Shannon objected to the children's continued detention. An order granting continued detention with DHHS was entered on that day.

An adjudication hearing on the amended petition was held on September 22, 2003. Shannon admitted to several of the allegations in the petition, including that one of her children was a member of the Omaha Tribe and that the others were eligible for enrollment. Shannon also admitted her use of alcohol or controlled substances; that she did not have safe, stable, and independent housing to provide to her children; and that her children were at risk for harm due to the facts alleged.

Before accepting the admission, the court informed Shannon of her right to a trial and stated, "If the Court makes a finding prior to your admission, that these are Indian children, at trial, the burden of proof would be by clear and convincing evidence, which is a higher standard than [in] typical cases." Documents

from the Omaha Tribe regarding the four children's tribal enroll-
ment status were admitted into evidence (indicating that not one
but two of the children were enrolled members), a factual basis
for filing the amended petition was given, and the court accepted
Shannon's admission. The court then made a verbal finding that
the ICWA was applicable "from this point forward" and stated
that notice of the hearing would be provided to the Omaha Tribe.
Shannon's attorney requested that the court order random urine
analysis for Shannon and that it order Shannon to complete a
psychological evaluation prior to the disposition hearing. The
court so ordered on September 23, 2003, adjudicating the chil-
dren under § 43-247(3)(a) by a preponderance of the evidence,
based on the admission plea. Shannon did not appeal the adjudi-
cation order.

On September 25, 2003, the court entered a nunc pro tunc
order, stating that the adjudication order had omitted the fol-
lowing: "On motion of the parties and based on the evidence
before the Court, this Court finds that the [ICWA], both Federal
and State, is applicable to these proceedings, AND IT IS SO
ORDERED."

A "disposition and permanency planning hearing" was held
on November 13, 2003. Although the record does not contain the
actual notice provided to the Omaha Tribe, the tribe appeared
through counsel at this hearing, thereby implying that the tribe
received notice. The DHHS case plan and court report were dis-
cussed during the hearing and adopted. In addition, the court
made another specific verbal finding that the ICWA would be
applicable to the proceedings. In its order, the court reiterated
that the ICWA was applicable to the proceedings and stated that
"reasonable efforts have been made to return the minor children
to the parental home and to finalize permanency," thereafter
reciting the efforts. The court also found that it would be con-
trary to the health, safety, and welfare of the children for them to
be returned home and that it was in their best interests and wel-
fare to remain in the temporary custody of DHHS. Shannon did
not object to the continued custody of the children with DHHS.
Shannon did not appeal from the disposition order.

On February 12, 2004, the Omaha Tribe filed a notice of inter-
vention and a notice of intent to transfer the matter to the Omaha

Tribal Court. A "review and permanency planning hearing" was also held that day. The case plan and court report were discussed. The court noted that "some additional pleadings have been filed by the Omaha Tribe, and they have been scheduled for hearing at a later date." In its order, entered February 12, the court again found that "reasonable efforts have been made to return the minor children to the parental home and to finalize permanency." The court also found again that it was contrary to the health, safety, and welfare of the children for them to be returned home and that it was in their best interests and welfare to remain in the temporary custody of DHHS.

The Omaha Tribe's motion to intervene and notice of intent to transfer were heard on March 2, 2004. The court treated the notice of intent to transfer as a motion to transfer. No party objected to the motion to intervene, and it was sustained. The motion to transfer was next addressed. Shannon's attorney did not object to the transfer, but the State, the children's guardian ad litem, and DHHS noted their concerns with the transfer. The motion to transfer was denied. No appeal was taken from the order denying the transfer.

After this, a series of "review and permanency planning" hearings occurred, on May 5, August 2, and November 15, 2004. Likewise, the court orders from these hearings stated that "reasonable efforts" at reunification had been made and that it was contrary to the health, safety, and welfare of the children for them to be returned home and in their best interests to stay in the temporary custody of DHHS. Shannon did not object to the continued custody of the children with DHHS at these review hearings. At the May 5 review hearing, Shannon objected to a recommendation that visitation with her children take place only in "therapeutic," not merely "supervised," settings and asked that the visits remain supervised. Shannon did not appear for the August 2 review hearing, and Shannon's counsel made no comments at that hearing beyond requesting a continuance and assenting to the introduction of a report, because she had not had an opportunity to review the recommendations with Shannon. The continuance was denied. Shannon did not appear at the November 15 review hearing either, and Shannon's attorney again made no comments, except to request a continuance, which was denied, and to object

to a concurrent plan of reunification and adoption after assenting to the introduction of another report. The court adopted DHHS' recommendations at each hearing. Shannon did not appeal any of the review orders.

On April 12, 2005, Shannon's attorney filed a petition to invalidate a number of the juvenile court's previous orders in the case, under Neb. Rev. Stat. § 43-1507 (Reissue 2004), and a motion to dismiss. The petition and motion were based on an alleged lack of compliance with the ICWA. The orders the petition sought to invalidate included those from the adjudication, the disposition, and the four subsequent review and permanency planning hearings. The petition stated that it was error for the court to adjudicate the children by a "preponderance of the evidence," rather than by " 'clear and convincing evidence' " (emphasis omitted) as required under Neb. Rev. Stat. § 43-1505(5) (Reissue 2004). Also, the petition stated that the court erred when in its orders upon the subsequent five hearings, the court found that " 'reasonable efforts' " had been made to return the children to the parental home, instead of " 'active efforts' " (emphasis omitted) as required by § 43-1505(4). In summary, the petition claimed that the juvenile court's orders violated § 43-1505(4) and (5) and thus should be invalidated under § 43-1507.

Shannon's attorney based the motion to dismiss specifically on a lack of jurisdiction. The motion claimed that because at the adjudication hearing, the court failed to use the proper burden of proof (clear and convincing evidence) and also failed to make a finding that a qualified expert would have testified that the continued custody of the children with Shannon was likely to result in serious emotional damage or physical damage to them, the court never acquired proper jurisdiction. The motion claimed that because of this, the matter should be dismissed and her children returned to her.

The juvenile court heard the petition to invalidate and the motion to dismiss on April 21, 2005, and denied both in an April 25 order. Shannon appeals from that order.

## ASSIGNMENTS OF ERROR

Shannon asserts two errors on appeal. First, Shannon claims that the separate juvenile court erred when it denied her petition

to invalidate several previous court orders, under § 43-1507, for failure to comply with the federal and Nebraska implementations of the ICWA. Second, Shannon claims that the court erred when it denied her motion to dismiss, alleging that by using the incorrect burden of proof under the ICWA at the adjudication hearing, the court never acquired jurisdiction over Shannon.

The State argues in its brief that § 43-1507 is unconstitutionally vague because it does not set any time parameters within which a petition to invalidate previous court orders must be filed. Whatever merit the argument may have, we cannot address the issue, as it was not raised in the juvenile court. A constitutional issue not presented to or passed upon by the trial court is not appropriate for consideration on appeal. *Mason v. City of Lincoln*, 266 Neb. 399, 665 N.W.2d 600 (2003). This argument will not be addressed further.

## STANDARD OF REVIEW

Cases arising under the Nebraska Juvenile Code are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings. *In re Interest of Brittany C. et al.*, 13 Neb. App. 411, 693 N.W.2d 592 (2005). In reviewing questions of law arising in such proceedings, an appellate court reaches a conclusion independent of the lower court's ruling. *Id.* A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law. *Id.*

## ANALYSIS

*Jurisdiction.*

As noted above, Shannon appeals from an order (1) denying her petition to invalidate the previous court orders and (2) denying her motion to dismiss. In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *In re Interest of Brittany C. et al., supra.* For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders. *Id.*

In Nebraska, the three types of final orders which may be reviewed on appeal are (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered. *Id.*; Neb. Rev. Stat. § 25-1902 (Reissue 1995). The order at issue herein did not fall into the first or third categories, as it did not determine the action and was not made on summary application after the entry of a judgment. Orders which fall into the second category of § 25-1902 must meet two requirements: A substantial right must be affected, and the court's order must be made in a special proceeding. *In re Interest of Brittany C. et al., supra.* A "substantial right" is an essential legal right, not a mere technical right. *Id.* A proceeding before a juvenile court is a "special proceeding" for appellate purposes. *Id.* Thus, we must consider the order which dismissed Shannon's petition to invalidate and motion to dismiss and what parental rights, if any, were affected by the order.

A substantial right is affected if an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to the appellant prior to the order from which he or she is appealing. *Id.* Several Nebraska cases have addressed whether a juvenile court order is a final order for the purpose of an appeal. See, *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991) (preadjudication order granting continued detention of child affects parent's substantial right and is thus final order and appealable), *disapproved on other grounds, O'Connor v. Kaufman*, 255 Neb. 120, 582 N.W.2d 350 (1998); *In re Interest of Brittany C. et al., supra* (preadjudication order denying transfer of matters to tribal court is final, appealable order). Compare, *In re Interest of Clifford M. et al.*, 258 Neb. 800, 606 N.W.2d 743 (2000) (mother's motion to dismiss State's motion to terminate parental rights based on improper retroactive application of statutory amendment was not final order because issue could be preserved at termination hearing and considered on appeal therefrom); *In re Interest of Anthony G.*, 255 Neb. 442, 586 N.W.2d 427 (1998) (order denying continued detention of juvenile prior to adjudication does not affect substantial right of State).

Shannon and the State both claim that the order denying the petition to invalidate and the motion to dismiss was in fact a final, appealable order. We agree, finding the analysis and decision in *In re Interest of Brittany C. et al.*, 13 Neb. App. 411, 693 N.W.2d 592 (2005), to be instructive. We conclude that the order denying the petition to invalidate pursuant to § 43-1507 and the motion to dismiss affected a substantial right and is thus a final order for the purpose of an appeal.

*Petition to Invalidate Previous Court Orders.*

■ Shannon first claims that the separate juvenile court erred when it denied her petition to invalidate previous court orders for failure to comply with both the federal and Nebraska implementations of the ICWA. Shannon filed her petition under the enforcement provisions of the federal ICWA, 25 U.S.C. § 1914 (2000), and of the Nebraska ICWA, § 43-1507. The two statutes are similar, and the Nebraska version, captioned "Petition to invalidate actions in violation of law," provides as follows:

> Any Indian child who is the subject of any action for foster care placement or termination of parental rights under state law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 43-1504 to 43-1506.

§ 43-1507.

■ Shannon claims that several of the juvenile court's orders violated § 43-1505(4) and (5) of the Nebraska ICWA (25 U.S.C. § 1912(d) and (e) (2000) of the federal ICWA) and thus should be invalidated under § 43-1507 (25 U.S.C. § 1914). In addressing Shannon's arguments, we are mindful of the purpose of the ICWA, recited below as explained by the Nebraska Supreme Court in *In re Interest of C.W. et al.*, 239 Neb. 817, 825, 479 N.W.2d 105, 112 (1992):

> The ICWA was enacted to promote the stability and security of Indian tribes and families through the establishment of minimum federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture.

When Congress enacted the ICWA, it had two main goals: (1) protecting the best interests of the Indian children and (2) promoting the stability and security of Indian tribes and families. See 25 U.S.C. § 1902. The act is based on the assumption that protection of the Indian child's relationship to the tribe is in the child's best interests. *Mississippi Choctaw Indian Band v. Holyfield*, 490 U.S. 30, 109 S. Ct. 1597, 104 L. Ed. 2d 29 (1989).

Neb. Rev. Stat. § 43-1502 (Reissue 2004) of the Nebraska ICWA, enacted in 1985, expresses the purpose of the state ICWA as implementation of the federal ICWA and recognizes Nebraska's policy of cooperating fully with Indian tribes in the state in order to ensure that the intent and provisions of the federal ICWA are enforced.

The provisions that Shannon asserts were violated in this case are § 43-1505(4) and (5), which mirror 25 U.S.C. § 1912(d) and (e) of the federal ICWA. The Nebraska provisions state:

> (4) Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under state law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

> (5) No foster care placement may be ordered in such proceeding in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

§ 43-1505.

The State argues that Shannon cannot attack the adjudication, disposition, and subsequent review orders because these orders were not timely appealed as required by Neb. Rev. Stat. § 25-1912 (Cum. Supp. 2004) (appeal of final order must be made within 30 days of issuance of order). Generally, it has been held that adjudication and disposition orders are final, appealable orders. See *In re Interest of Ty M. & Devon M.*, 265 Neb. 150, 655 N.W.2d 672 (2003). Further, in the absence of a direct

appeal from an adjudication order, a parent may not question the existence of facts upon which the juvenile court asserted jurisdiction. *Id.*; *In re Interest of Phyllisa B.*, 265 Neb. 53, 654 N.W.2d 738 (2002); *In re Interest of Brook P. et al.*, 10 Neb. App. 577, 634 N.W.2d 290 (2001).

Section 43-1507 and its federal counterpart, 25 U.S.C. § 1914, do not contain any language which specifies a time limit for petitioning a court to invalidate an action for foster care placement or termination of parental rights. Nebraska courts have not addressed the operation of § 43-1507 in any respect. In searching case law from other jurisdictions under § 1914, we have found that a time limit for filing a petition to invalidate is rarely discussed. However, the Iowa Court of Appeals addressed its state error preservation rules and § 1914 in *In Interest of J.D.B.*, 584 N.W.2d 577 (Iowa App. 1998). In that case, after the mother's parental rights were terminated, she appealed, claiming that the termination proceeding should be invalidated under § 1914 because prior proceedings in the case had violated 25 U.S.C. § 1912(e) (requiring expert testimony whenever foster care placement is involved). The appellate court found that the mother was barred from challenging the trial court's previous orders because she did not raise the issue at trial, properly preserving it for appeal. The appellate court asked whether its rules of error preservation were preempted under federal law and concluded, "[W]e find nothing in [the] ICWA which expressly or impliedly preempts a state's error preservation rules. . . . Moreover, we are mindful that to allow a party to make untimely challenges to prior [children-in-need-of-assistance] proceedings would needlessly delay permanency for the children." (Citations omitted.) *In Interest of J.D.B.*, 584 N.W.2d at 581. Because state law required that a party preserve error to have an issue reviewed on appeal, the court held that the mother did not appeal from any of the children-in-need-of-assistance proceedings and the time for appeal had passed. Therefore, the § 1914 action was not allowed and the termination was affirmed.

The Alaska Supreme Court in *Matter of Adoption of T.N.F.*, 781 P.2d 973 (Alaska 1989), held that Alaska's time limit regarding the finality of an adoption was incorporated into the federal ICWA's previous-orders invalidation statute. In that case, the

mother consented to the adoption of her child but later brought a § 1914 petition in the trial court to vacate the adoption, claiming that her consent was invalid because it was not " 'recorded before a judge' " as required by the ICWA. 781 P.2d at 974. The trial court denied the petition to vacate, basing its decision on state law relevant to adoption decrees, which provided that an adoption decree may not be questioned on any ground 1 year after its issuance. The Alaska Supreme Court found that since the invalidation statute had no explicit time limitation, the state law relevant to adoption decrees should be incorporated into the federal invalidation statute. The court noted that a parent's interest in a § 1914 action must be balanced against an adoptive family's interests.

In *In re S.B.*, 130 Cal. App. 4th 1148, 30 Cal. Rptr. 3d 726 (2005), the mother appealed from the termination of her parental rights as to her daughter. Following detention, jurisdictional (adjudication), and dispositional hearings, it was learned that the daughter had Indian ancestry. At that point, the social worker involved in the case attempted to give notice pursuant to the ICWA. Although the notice did not comply with the applicable requirements, it did reach the tribe and the tribe did respond. The mother filed a motion to invalidate the juvenile court's previous findings and orders because the court and the government children's services agency involved in the case had failed to inquire whether the daughter was an Indian child. The motion to invalidate was denied, and the court proceeded to terminate the mother's parental rights. On appeal, the *In re S.B.* court affirmed this denial, finding that the mother had waived her claim of belated compliance with a notice provision of the ICWA by failing to object on ICWA grounds at the previous hearings. The court noted that while a parent cannot waive a tribe's right to notice, where the tribe appeared and did not ask on its own behalf for the court to invalidate any prior actions, the parent's independent right to invalidate prior orders can be waived.

Numerous cases exist from other jurisdictions where § 1914 petitions to invalidate were addressed on appeal without mention of time limitations or whether the issue was properly preserved for appeal. A majority of these cases involves situations where the appropriate ICWA notice was not given to the tribe or parent.

See, *In re Adoption of Baby Girl B.*, 67 P.3d 359 (Okla. Civ. App. 2003) (reversing trial court's denial of father and tribe's joint petition to invalidate, for lack of notice compliance under ICWA, termination of father's parental rights and court's consent to adoption); *State ex rel. Juv. Dept. v. Tucker*, 76 Or. App. 673, 710 P.2d 793 (1985) (affirming denial of mother's § 1914 motion; failure to comply with ICWA at jurisdictional and dispositional proceedings not error because trial court had no reason to know child was Indian at those points; tribe properly notified prior to termination order); *Matter of S.Z.*, 325 N.W.2d 53 (S.D. 1982) (reversing trial court's grant of § 1914 petition; ICWA notice requirement substantially complied with); *In re Dependency of T.L.G.*, 126 Wash. App. 181, 108 P.3d 156 (2005) (§ 1914 used to collaterally attack child custody determination where ICWA notice not given). In cases where an invalidation is sought for lack of notice, it would be unreasonable to impose a time limitation of the § 1914 procedure upon the party claiming lack of notice. In the present case, there is no claim that the appropriate notice was not given to the tribe or Shannon. The record reveals that Shannon was notified of the applicability of the ICWA and that the tribe intervened and sought transfer of the case under Neb. Rev. Stat. § 43-1504(2) and (3) (Reissue 2004).

Cases exist from other jurisdictions wherein § 1914 has been used to attempt to invalidate orders entered by a court which did not use the appropriate burden of proof or make the requisite findings under 25 U.S.C. § 1912(d) and (e). In a recent case, *In re S.M.H.*, 33 Kan. App. 2d 424, 103 P.3d 976 (2005), the Court of Appeals of Kansas reversed an adjudication order for failure to apply the standards of proof set forth in the ICWA. In that case, the mother appealed from an adjudication order in which the trial court found that her children were in need of care and that she was unable to provide adequate care and control necessary for the children's physical, mental, or emotional health. It was undisputed that the ICWA applied to the proceedings; however, the trial court did not make specific findings, as it was required by law to do, that the children were Indian children and that the ICWA was applicable to the proceedings. Initially, the *In re S.M.H.* court noted that the mother failed to raise this issue in the trial court. Nevertheless, the *In re S.M.H.* court allowed the

mother to assert the claim on appeal, recognizing that § 1914 allows a parent to " 'petition any court of competent jurisdiction to invalidate [an action for foster care placement] upon a showing that such action violated any provision of [the ICWA].' " 33 Kan. App. 2d at 430, 103 P.3d at 981. The court found that § 1912(e)—which requires that foster care placement of an Indian child be supported by clear and convincing evidence, including qualified expert witness testimony, that continued custody of the child by the Indian parent is "likely to result in serious emotional or physical damage to the child"—was not applied but should have been. The court examined the determination of whether the children were in need of care under its usual standard of review for adjudications, finding that the evidence supported the determination that the children were without the care and control necessary for their physical, mental, or emotional health. However, because the ICWA was not properly applied regarding continued custody by the mother (see § 1912(e)) and because the State of Kansas failed to present " 'qualified expert testimony,' " *In re S.M.H.*, 33 Kan. App. 2d at 434, 103 P.3d at 984, the court reversed the adjudication order. In reaching its conclusion, the court recognized that courts considering prior cases had found that substantial compliance with the ICWA was satisfactory or that any error resulting from lack of strict compliance was harmless. Under the facts of the case, the *In re S.M.H.* court could not say with any certainty that the outcome of the case would have been the same if expert testimony had been received, and it thus concluded that the error was not harmless.

The Court of Appeals of Iowa addressed a § 1914 argument in an appeal from a termination of parental rights case in *In Interest of J.W.*, 528 N.W.2d 657 (Iowa App. 1995). One of the mother's arguments in that case was that the termination should be reversed because the lower court violated § 1912(e) when it placed the children in temporary foster care and continued their placement at subsequent dispositional hearings without the testimony of qualified expert witnesses. The mother relied on § 1914 to support her claim. On the facts of the case, the appellate court declined to extend the language of § 1914 to invalidate the termination. It stated that § 1914 " 'does not provide for invalidation of a valid separate action because of an invalid

prior one.' " *In Interest of J.W.*, 528 N.W.2d at 661. The appellate court noted that in terminating the mother's parental rights, the lower court did not rely exclusively on its earlier findings, and that three qualified ICWA experts gave the requisite testimony under § 1912(e) at the termination proceeding.

In *In re G.S.*, 312 Mont. 108, 59 P.3d 1063 (2002), the Montana Supreme Court addressed a mother's § 1914 challenge to a dispositional order wherein the lower court continued its previous order granting temporary legal custody of the children to a public health and human services agency. The mother challenged the lower court's finding that the agency employed active efforts to prevent breaking up the Indian family as required under § 1912(d). The appellate court first discussed the lack of an evidentiary standard in § 1912(d), as opposed to § 1912(e), the latter of which explicitly requires clear and convincing evidence of harm in connection with a need for foster care placement. The appellate court determined that § 1912(d) should also be governed by clear and convincing evidence and found that although this standard was not identified by the lower court in making its finding under § 1912(d), the clear and convincing evidence standard was met in connection with the lower court's determination that the agency employed active, yet unsuccessful, efforts to provide remedial and rehabilitative services designed to prevent the breakup of the family.

In *In re S.B.*, 130 Cal. App. 4th 1148, 30 Cal. Rptr. 3d 726 (2005), despite holding that the mother had waived her claim of belated compliance with a notice provision of the ICWA, as discussed above, the appellate court went on to conduct a "harmless error" analysis with respect to the § 1912(d) requirement. In that case, the juvenile court had found at the jurisdictional and dispositional hearing that "reasonable efforts" had been made to prevent or to eliminate the need for removal of the daughter from the home, in conformity with state law. *In re S.B.*, 130 Cal. App. 4th at 1165, 30 Cal. Rptr. 3d at 736. The appellate court recognized that before making a foster care placement, the juvenile court in an ICWA case has to find, based upon clear and convincing evidence, that " 'active efforts ha[d] been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts ha[d] proved

unsuccessful.'" *Id.* at 1164, 30 Cal. Rptr. 3d at 736, quoting § 1912(d). The appellate court cited previous case law from its jurisdiction that said that "'the standards in assessing whether "active efforts" were made to prevent the breakup of the Indian family, and whether reasonable services under state law were provided, are essentially undifferentiable.'" *In re S.B.*, 130 Cal. App. 4th at 1165, 30 Cal. Rptr. 3d at 736. The court concluded that this principle was applicable under the facts of the case, finding, "On this record, we see no reason to suppose that [if] the juvenile court had been asked to find whether 'active efforts' had been made, rather than 'reasonable efforts,' it would have made a different finding." *Id.* at 1165, 30 Cal. Rptr. 3d at 736-37.

Similar approaches have been followed in other appellate courts in reviewing ICWA determinations where the exact language of the ICWA was not contained in the court's findings, in cases which did not involve § 1914 challenges. In *In re M.D.M.*, 313 Mont. 51, 59 P.3d 1142 (2002), the Montana Supreme Court affirmed the termination of a father's parental rights as to a child subject to the ICWA. The lower court found that the child would be exposed to serious emotional or physical damage unless the father's parental rights were terminated; however, it did not declare, in precise terms, that the State of Montana had satisfied its burden of proving the likelihood of such harm "beyond a reasonable doubt" as required by § 1912(f). *In re M.D.M.*, 313 Mont. at 55, 59 P.3d at 1146. After noting the principle that "'[t]he law respects form less than substance,'" *id.*, the appellate court concluded that it was implicit in the lower court's finding that the required burden of proof was met.

What we have gleaned from the foregoing case law concerning the ICWA is that each case is dependent upon its particular facts and circumstances. In our de novo review, we are required to reach a conclusion independent of the trial court's findings. We find the following facts to be of significance in the present case: At the adjudication hearing, Shannon admitted to the pertinent allegations in the amended petition. Because Shannon admitted to the allegations of the amended petition—including that one of her children was a member of the Omaha Tribe and the others were eligible for enrollment; that she used alcohol or controlled substances; that she did not have safe, stable, and

independent housing to provide to the children; and that the children were at risk for harm due to the facts alleged—it was unnecessary for the State to adduce evidence at the adjudication hearing. Before accepting Shannon's admission, the juvenile court notified Shannon that if the adjudication went to trial, the burden of proof would be clear and convincing evidence. After accepting Shannon's admission, the juvenile court made a specific finding that the ICWA was applicable to the proceedings "from this point forward." The juvenile court adjudicated the children under § 43-247(3)(a) by a preponderance of the evidence, based on the admission plea. Shannon did not object to the adjudication. At the disposition and subsequent review hearings, the juvenile court found that reasonable efforts had been made to return the children to the parental home and to finalize permanency; that it would be contrary to the health, safety, and welfare of the children to be returned home; and that it was in the best interests and welfare of the children to remain in the custody of DHHS for appropriate care and placement. Shannon made some objections to certain provisions in the case plans offered at these hearings; however, she did not object to the continued foster home placement, and she did not adduce evidence to show that the case plans were not in the children's best interests. Shannon did not appeal from any of the adjudication or dispositional orders, but, rather, approximately 18 months later, filed the instant petition to invalidate. Clearly, Shannon has been aware of the applicability of the ICWA since the filing of the State's amended petition and during all of the hearings of which she now complains. Further, the tribe has been properly notified and has participated in the proceedings.

Under our general appellate jurisprudence, Shannon would be precluded from asserting error in the adjudication and dispositional orders by virtue of her failure to preserve any error by a timely appeal. However, because we conclude that any error with respect to these orders is harmless in this case, we need not determine whether our rules of error preservation or waiver preclude Shannon from petitioning to invalidate previous court orders under § 43-1507 and 25 U.S.C. § 1914. We conclude, based upon the pleadings, factual background, and admission of Shannon, that it was not error to find that the children came within the

purview of § 43-247(3)(a) in that they were lacking proper parental care by reason of the faults or habits of Shannon. Further, it was not error for the juvenile court to make this finding based upon a preponderance of the evidence. However, with respect to the foster care placement of the children, the juvenile court did not articulate a standard by which it made its findings; nor did it make a finding, supported by testimony of qualified expert witnesses, that active but unsuccessful efforts had been made to prevent the breakup of the Indian family or that continued custody of the children by Shannon was likely to result in serious emotional or physical damage. See, § 43-1505(4) and (5); 25 U.S.C. § 1912(d) and (e). Based upon our de novo review, we find that any error related to the juvenile court's failure to specifically state the foregoing was harmless error in that the evidence would have supported these ICWA findings.

In sum, we first find that there was clear and convincing evidence to support a finding that active efforts had been made to prevent the breakup of this family—which efforts included therapy, placement, case management, psychiatric and chemical dependency evaluations, visitation services, transportation assistance with visitation, parenting and domestic violence classes, and random urine analysis—and that such efforts were unsuccessful. Second, because Shannon did not challenge the continued out-of-home placement of the children, no expert testimony was given regarding the likelihood that continued custody with Shannon was likely to result in serious emotional or physical damage. However, the evidence adduced by the State at the dispositional hearing clearly and convincingly supports such a finding of harm. Shannon's psychological evaluation indicated that Shannon had a history of drug and alcohol abuse, and her diagnoses included major depressive disorder, alcohol dependence, adjustment disorder with anxiety, and antisocial and depressive personality features. The conclusions of the evaluation indicated that Shannon's parenting problems stemmed from her addiction, rather than a psychopathology, and that while Shannon completed her inpatient chemical dependency treatment, she failed to complete outpatient treatment and did not provide verification that she was attending Alcoholics Anonymous or Narcotics Anonymous meetings or that she had obtained a "sponsor."

Shannon did not submit to all of the requested urinalysis screenings. In addition, Shannon did not address her domestic violence issues through a group setting or through individual therapy; nor did she attend parenting classes. Shannon had no proper housing or employment, and her visitation with her children was sporadic. Based upon the psychological evaluation and the caseworkers' court reports, it has been clearly and convincingly shown that custody with Shannon would result in serious emotional or physical damage to the children.

Following our de novo review of the particular facts and circumstances of this case, we conclude that the juvenile court did not err in denying Shannon's petition to invalidate the previous court orders.

*Motion to Dismiss.*

Shannon asserts that the juvenile court erred in denying her motion to dismiss. Shannon argues that by using the incorrect burden of proof under the ICWA at the adjudication, the court never acquired jurisdiction over her. As stated above, the adjudication was proper and the evidence supported the required ICWA findings. Further, in the absence of a direct appeal from an adjudication order, a parent may not question the existence of facts upon which the juvenile court asserted jurisdiction. *In re Interest of Ty M. & Devon M.*, 265 Neb. 150, 655 N.W.2d 672 (2003). This assignment of error is without merit.

## CONCLUSION

The juvenile court did not err in denying Shannon's petition to invalidate the previous adjudication and dispositional orders, as the evidence supported the required ICWA findings. Likewise, the juvenile court did not err in denying Shannon's motion to dismiss for lack of jurisdiction.

AFFIRMED.