No. 02-115

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 183

IN THE MATTER OF THE CUSTODY
AND PARENTAL RIGHTS OF
A.L.R., A.A.R., AND T.C.R.,

      Youths in Need of Care.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark,
Honorable Dorothy McCarter, Judge Presiding

COUNSEL OF RECORD:

      For Appellant:

            Jeremy Gersovitz, Public Defender, Helena, Montana

      For Respondent:

            Honorable Mike McGrath, Attorney General; Tammy Plubell,
Assistant Attorney General, Helena, Montana

            Leo J. Gallagher, County Attorney; Carolyn A. Clemens, Deputy
County Attorney, Helena, Montana

            Randi Hood, Helena, Montana (For Youths)

Submitted on Briefs:  July 18, 2002

Decided:  August 27, 2002

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Ruby, the natural mother of A.L.R., A.A.R. and T.C.R., appeals from the Findings of Fact, Conclusions of Law, and Order issued by the First Judicial District Court, Lewis and Clark County, terminating her parental rights. We affirm.

¶2 The issue on appeal is whether the District Court erred in terminating Ruby's parental rights.

*Facts and Procedural Background*

¶3 The Montana Department of Health and Human Services (the Department) first became involved with Ruby when she was charged with endangering the welfare of a child when Ruby was found passed out in her car with one-week-old A.L.R. At that time, A.L.R. was adjudicated a youth in need of care, and the Department developed a treatment plan for Ruby. A.L.R. was returned to Ruby's care approximately six months later. The Department continued to monitor the case and added A.A.R. to the youth in need of care petition when he was born in 1993. At a review hearing in April 1994, the Department reported that Ruby had successfully completed her treatment plan and requested that its services to Ruby be terminated since the children were successfully in her care. T.C.R. was born in 1997.

¶4 The Department again became involved with Ruby in 1999 when she failed to pick up A.L.R. and A.A.R. from school. Ruby did not contact the Department for over twenty-four hours to inquire about the whereabouts of the children, and she was subsequently charged with criminal possession of dangerous drugs. The children were

2

again adjudicated as youths in need of care, and temporary legal custody was awarded to the Department.  Because all three children are eligible for enrollment in the Blackfeet Tribe, the Department gave notice to the Tribe of its intervention with the family.  After approximately six months, Ruby had satisfactorily completed her treatment plan, and the court dismissed the petition on June 6, 2000.

¶5   In November 2000, school officials in Whitehall, Montana, contacted the Department  to report that A.L.R. and A.A.R. had hitchhiked twelve miles into town to get to school.  Other members of the community had observed the boys hitchhiking to school on at least four other occasions, and the boys had already missed eight days of school.  The boys reported that their mom did not get them up for school, did not feed them breakfast and did not make sure they made it to the school bus on time.  They told the social worker that if they returned home after missing the bus, their mom would yell at them and make them go back to bed until she was ready to take them to school.

¶6   The Department placed A.L.R. and A.A.R. in foster care and filed a petition for temporary legal custody of all three boys.  A treatment plan was developed and adopted by the District Court in Jefferson County on December 18, 2000.  The plan required Ruby and her husband to participate in couple and family counseling, to follow their probation guidelines, and to attend parenting class and also provided for supervised visitation with A.L.R. and A.A.R.  T.C.R. remained in the home with Ruby, and the treatment plan

3

called for intensive in-home services. In January, Ruby informed the Department that she and her husband were moving to Helena. The social worker instructed Ruby to establish a suitable home in Helena and to continue working on the treatment objectives while awaiting transfer of the case from Jefferson County to Lewis and Clark County.

¶7 On March 9, 2001, the Department was called to Ruby's apartment in Helena to pick up T.C.R. when Ruby was arrested for operating a methamphetamine lab in the apartment. T.C.R. was brought to the Children's Crisis Center in Helena, where A.L.R. and A.A.R. were residing. All three boys exhibited severe behavioral problems while at the Children's Crisis Center.

¶8 On March 16, 2001, the Department filed a petition in Lewis and Clark County requesting temporary legal custody of all three boys. In April, the District Court adjudicated the boys as youths in need of care. A hearing was held in October to terminate Ruby's parental rights to A.L.R., A.A.R. and T.C.R., and the court issued an order on November 6, 2001, terminating Ruby's parental rights. She appeals.

*Standard of Review*

¶9 We review a district court's decision to terminate parental rights to determine whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *In re C.A.,* 2000 MT 227, ¶ 5, 301 Mont. 233, ¶ 5, 8 P.3d 116, ¶ 5. Findings of fact are clearly erroneous if they are not supported by substantial evidence, the court misapprehended the effect of the

4

evidence, or this Court's review of the record persuades it that a mistake has been made. *In re B.H.,* 2001 MT 288, ¶ 13, 307 Mont. 412, ¶ 13, 37 P.3d 736, ¶ 13. Additionally, courts must give primary consideration to the best interests of the child as demonstrated by the child's physical, mental and emotional needs. *In re B.H.,* ¶ 13.

## *Discussion*

¶10 Did the District Court err in terminating Ruby's parental rights?

¶11 The criteria for termination of parental rights is set forth at § 41-3-609, MCA. Of the six possible scenarios which allow for termination, § 41-3-609(1)(f), MCA, applies to this case and provides in pertinent part:

> (1) The court may order a termination of the parent-child legal relationship upon a finding that any of the following circumstances exist:
> . . .
> (f) the child is an adjudicated youth in need of care and both of the following exist:
> (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and
> (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

¶12 Because the children are eligible for enrollment in the Blackfeet Tribe, the Indian Child Welfare Act (ICWA) applies to this case. Under ICWA, the party seeking termination of an individual's parental rights to an Indian child under state law "shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts

5

have proved unsuccessful." 25 U.S.C. § 1912(d). Additionally, the party seeking termination has the burden of proving beyond a reasonable doubt that "the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(f).

¶13 The District Court found that the children were adjudicated as youths in need of care; that a treatment plan was prepared in Jefferson County and approved by the court; that the ICWA worker for the Blackfeet Tribe testified that the Department made active and reasonable efforts to prevent the break-up of the family and that continued custody of the children with Ruby is likely to result in serious emotional and physical damage to the children; that Ruby lacks the parenting skills as well as the mental and emotional maturity to parent normal children; that these children are seriously emotionally disturbed; that Ruby failed to complete the approved treatment plan; and that Ruby is unlikely to make significant progress within a reasonable time to meet the children's needs. From these findings, the court concluded that the approved treatment plan was not complied with and was not successful because of Ruby's drug problems; that the children are severely disturbed and have special needs as a result of Ruby's severe neglect; that the best interests of the children would be served by termination of the mother-child relationship and by awarding permanent legal custody to the Department; and that the Department had proven beyond a reasonable doubt that continued

custody of the children by Ruby would result in serious emotional and physical damage to the children.

¶14 The only argument Ruby makes is that she never actually had a treatment plan during the six months preceding her termination hearing and that the State should have designed an appropriate treatment plan that she could have completed during her county jail and prison incarceration.

¶15 The Department responds that although "Ruby's treatment plan in the instant case was only in place from December 2000 through March 2001, it was Ruby who determined the shortness of her last treatment plan by participating in dangerous criminal conduct."

¶16 A treatment plan was prepared in Jefferson County and adopted by the court on December 18, 2000, to be in effect for 180 days. The treatment plan required Ruby to follow her probation guidelines, to obtain couple and family counseling and to attend supervised visitation with the boys. The record is replete with factual evidence which indicates that Ruby failed to comply with or complete these requirements. In fact, it is undisputed that less than three months after the plan's implementation, Ruby was arrested for manufacturing methamphetamine in her apartment with T.C.R. present. Ruby is presently incarcerated on convictions of Criminal Production of Dangerous Drugs (Accountability), Negligent Endangerment and a probation violation involving Criminal Possession of Dangerous Drugs (clorazepate).

¶17 Although a new treatment plan was not prepared in Lewis and Clark County, the social worker in Jefferson County had advised

7

Ruby to continue working on the approved treatment plan. Ruby claims on appeal that the Jefferson County treatment plan was "suspended," but there is no evidence in the record to indicate that it was not still in effect. Several Department workers from Lewis and Clark County met with Ruby before her arrest, and Ruby continually denied having an alcohol or drug abuse problem and did not see a need for treatment. The social worker in Lewis and Clark County set minimal goals for Ruby, such as getting better locks on the doors to her apartment. Even this simple goal proved too difficult for Ruby to accomplish. Several days before Ruby's arrest, T.C.R. was found wandering around on Prospect Avenue in Helena by himself, and Ruby was cited for endangering a child.

¶18 Several witnesses testified to the fact that Ruby missed many of her scheduled visitations with the children and that when she failed to show up for the visits, it caused the children great anxiety. This occurred often enough that staff at the Children's Crisis Center did not inform the children of proposed visits until Ruby actually showed up. When Ruby did show up for visits, the children afterward became violent and began sexually acting out. According to staff at the Crisis Center, the children's emotional upheaval lasted several weeks after one visit.

¶19 Further, the Department has been involved with Ruby and her children off and on since June 1992. Throughout that time, Ruby has completed several other treatment plans, but as soon as the Department ceases its services to her, Ruby drifts back to a chaotic, chemically dependent lifestyle. Additionally, family

8

services agencies in Idaho, Colorado and Oregon have been involved with this family. Ruby's parental rights to three of her older children were terminated by the Idaho Department of Health and Welfare in 1994. The record clearly shows a longstanding history of Ruby's abuse and neglect of the children.

¶20 The District Court correctly concluded that Ruby did not comply with or successfully complete a court approved treatment plan, that Ruby is unlikely to make significant progress within a reasonable time to meet the children's needs, and that the Department proved beyond a reasonable doubt that the continued custody of the children by Ruby would result in serious emotional and physical damage to the children.

¶21 We affirm the District Court's order terminating Ruby's parental rights to A.L.R., A.A.R. and T.C.R.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ TERRY N. TRIEWEILER
/S/ JIM RICE