No. 02-276

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 305

IN THE MATTER OF M.D.M.,

A Youth in Need of Care.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone,
Honorable Gregory Todd, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Kevin Gillen, Gillen Law Office, Billings, Montana

For Respondent:

Honorable Mike McGrath, Attorney General; Mark W. Mattioli,
Assistant Attorney General; Helena, Montana

Nancy G. Schwartz, Assistant Attorney General, Billings, Montana

Dennis Paxinos, County Attorney, Billings, Attorney

Patrick Kenney, Attorney at Law, Billings, Montana (Guardian Ad Litem)

Gary Beaudry, Attorney at Law, Williston, North Dakota (Fort Peck Tribes)

Submitted on Briefs: August 22, 2002

Decided: December 12, 2002

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Appellant Father, Vernal M., appeals from the Thirteenth Judicial District Court's judgment terminating his parental rights. We affirm.

¶2 The following issue is raised on appeal:

¶3 Whether the District Court erred when it determined that the statutory criteria for terminating Vernal's parental rights were satisfied.

PROCEDURAL BACKGROUND

¶4 M.D.M. is the four-year-old daughter of Autumn D. and Vernal M. As an enrollable member in the Assiniboine-Sioux Fort Peck Tribes, she is subject to the Indian Child Welfare Act (ICWA). M.D.M. is in the protective care of the Montana Department of Public Health and Human Services, Child and Family Services Division, and has lived with a foster family since her birth.

¶5 When M.D.M. was born, the State became concerned that Autumn, who was working as a prostitute while pregnant, had received little or no prenatal care and was being abused by her husband and pimp, Vernal. For this reason, and because Vernal had a twenty-year criminal history that included convictions for DUI, disorderly conduct, obstruction of justice, possession of an open container, and arrests for domestic abuse, the State filed a petition for Temporary Investigative Authority (TIA). Following testimony, and after all of the parties, including the Tribes, had stipulated to the TIA, the District Court granted the State's request. The court also approved the first of four treatment plans for Autumn and Vernal, and assigned Pam Weischedel, a community social worker, to assist the couple in completing

2

their treatment. Pursuant to these treatment plans, Vernal was required to establish a stable financial status through legal means, maintain an appropriate home for his family, and pay child support in the amount of $50.00 per month. This parenting component of the treatment also involved weekly classes on parenting skills and anger management. In addition, Vernal was required to obtain psychological and chemical dependency evaluations, and to participate in random urinalysis testing.

¶6 In August 1998, after failing to complete any part of their first treatment plans, Vernal and Autumn moved from Billings to Seattle, Washington. Vernal requested that the State take steps toward placing M.D.M. with her uncle, Vernal's brother, in Everett, Washington, but was informed by Weischedel that the Tribes probably would not approve of the placement. During the following year, Vernal only partially completed his second and third treatment plans. He failed to maintain a stable home and did not receive chemical dependency and psychological evaluations. As a result, the District Court adjudicated M.D.M. as a Youth in Need of Care and awarded the State temporary legal custody.

¶7 While in Seattle, Autumn gave birth to another baby, E.M.M. Because E.M.M. had tested positive for cocaine, she was placed in the protective custody of the State of Washington. As in Montana, Washington's efforts to rehabilitate Vernal were unsuccessful. Vernal neglected to follow through with chemical dependency treatment, family counseling, parenting classes, and psychological evaluations. Because of Vernal's noncompliance, Washington terminated his parental rights to E.M.M., and placed the baby in the care of M.D.M.'s foster family.

¶8 Subsequently, Child and Family Services in Montana filed a petition in the Thirteenth Judicial District Court requesting the termination of Vernal's parental rights to M.D.M. During a hearing on the petition, the State presented testimony that Vernal had been arrested on federal charges of Promoting Prostitution in Interstate Commerce. According to FBI agent, David Lemoine, Vernal was involved in a prostitution ring, and had pimped at least four girls, two of whom were Native Americans, and all of whom were either disabled or runaways. The indictment against Vernal included 30 counts stemming from conduct such as routine cane-beatings, which he employed as a means of discipline when the girls tried to leave. In exchange for his testimony, Vernal received a light sentence and was incarcerated for just over a year until his release on probation. Because of his incarceration, Vernal was unable to attend the termination hearing.

¶9 The District Court granted the State's petition and terminated Vernal's parental rights. Vernal filed an appeal with this Court, and the case was remanded back to the District Court after the State conceded that it had improperly served Vernal with notice of the original hearing. Termination proceedings were reopened, and the District Court heard testimony from Dr. Ned Tranel that M.D.M. exhibited symptoms of developmental delays caused by her prenatal exposure to drugs and alcohol. Tranel also stated that M.D.M. had developed a "secure" and "positive" attachment to her foster family. In Tranel's opinion, the removal of M.D.M. from her foster family would have placed her at a high risk of developing serious pathological problems, including emotional, social, and cognitive damage. In addition, Madonna McConnell, an expert witness testifying on behalf of the Fort Peck Assiniboine and

4

Sioux Tribes, noted that after a careful examination of the possible placements for M.D.M., the Tribes had concluded that M.D.M.'s permanent placement with the foster family would be in her best interests. The Tribes also approved of placing E.M.M. with the same family. McConnell expressed that she was certain that if M.D.M. were returned to Vernal's care, she would be exposed to severe emotional or physical harm.

¶10   In response, Vernal testified that he should not have been required to complete the treatment plans proposed by the State. He denied having a domestic violence or drug and alcohol problem, and argued that his involvement in the Washington prostitution ring was minimal. He maintained that he had renounced his life of crime and that he could safely parent his children. District Court Judge Gregory Todd rejected Vernal's contentions, and terminated his parental rights to M.D.M. pursuant to §§ 41-3-609(1)(b) and (d), 41-3-423(2)(e), 41-3-609(1)(f)(i) and (ii), and 41-3-609(2)(b), MCA. Vernal then filed this appeal.

## DISCUSSION

¶11   We address what appears to be the central issue of Vernal's appeal, that being whether the District Court complied with ICWA criteria when it determined that the State's evidence established beyond a reasonable doubt that M.D.M. would be exposed to serious emotional or physical damage unless Vernal's parental rights were terminated.

¶12   We review a trial court's decision to terminate parental rights for abuse of discretion. *See In the Matter of C.P.*, 2001 MT 187, ¶ 9, 306 Mont. 238, ¶ 9, 32 P.3d 754, ¶ 9 (citing *In the Matter of J.M.J.*, 1999 MT 277, ¶ 16, 296 Mont. 510, ¶ 16, 989 P.2d 840, ¶ 16). The test

5

for an abuse of discretion is "whether the trial court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice." *In the Matter of C.P.*, ¶ 9.

¶13    The standard of review of a trial court's findings of fact in a parental termination case is whether the findings in question are clearly erroneous. *See Matter of P.E.* (1997), 282 Mont. 52, 56, 934 P.2d 206, 209; *In the Matter of J.L., D.L. and A.G.* (1996), 277 Mont. 284, 287, 922 P.2d 459, 461. The standard of review of a trial court's conclusions of law in such cases is whether its conclusions are correct. *Matter of P.E.* (1997), 282 Mont. 52, 56-57, 934 P.2d 206, 209; *Matter of J.L.*, 277 Mont. at 287, 922 P.2d at 461.

¶14    Because M.D.M. is eligible for enrollment in the Assiniboine-Sioux Fort Peck Tribes, ICWA applies in this case. ICWA governs, among other matters, the termination of parental rights. Specifically, the Act dictates that a party seeking to terminate an individual's parental rights to an Indian child has the burden of proving beyond a *reasonable doubt* "that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical harm to the child." 25 U.S.C. § 1912(f).

¶15    In its findings of fact and conclusions of law, the District Court made the following determinations: that M.D.M. was adjudicated as a Youth in Need of Care; that the State prepared several court approved treatment plans for Vernal, none of which he successfully completed; that Vernal continued to be involved in criminal activity until his arrest in November 1999; that despite the State's remedial and rehabilitative efforts, Vernal has not made changes of a sustained nature that would allow him to safely parent M.D.M.; that the

6

State presented sufficient evidence, including the testimony of a psychologist and other professionals, that returning M.D.M. to Vernal's care would likely result in serious emotional or physical harm to M.D.M.; and that the best interests of M.D.M. would be served by terminating her relationship with Vernal, and granting the State the right to consent to her adoption.

¶16　Vernal argues that the District Court's determination, that unless his parental rights were terminated, M.D.M. would be exposed to serious emotional or physical harm, is not supportable because the court neglected to declare, in precise terms, that the State satisfied its burden of proving the likelihood of such harm beyond a reasonable doubt. However, Vernal ignores the well-established principle, set forth in § 1-3-219, MCA, that "[t]he law respects form less than substance." The District Court noted that Ms. McConnell, who testified for the Tribe, concluded that there was "no doubt that if [M.D.M.] would be returned to [Vernal], she would likely suffer serious emotional or physical harm." The court also concluded that "the State has presented sufficient evidence . . . that returning [M.D.M.] to [Vernal's] care is likely to result in serious emotional or physical harm to [M.D.M.]," and that "[t]he Court is convinced that [M.D.M.] is likely to suffer serious emotional, if not physical damage, if returned to the care of Vernal." These statements demonstrate an understanding, on the part of the District Court, that the State satisfied its burden of proof. Although there was no specific finding by the District Court that the burden of proof was met, it is certainly implicit in the court's statements, and to hold otherwise would be to elevate form over substance.

¶17 Furthermore, the facts, as construed by the District Court, clearly support the termination of Vernal's parental rights. Vernal failed to complete his first treatment plan, and only partially completed the second and third treatments. Vernal visited M.D.M. only five times during the three-month period following her birth. He failed to maintain a stable home, and did not receive chemical dependency and psychological evaluations. Vernal was convicted for his involvement in a prostitution ring in Washington State, when he pimped four girls, at least one of whom he beat severely. He was incarcerated for more than a year, and is currently serving a probationary sentence.

¶18 We upheld a trial court decision to terminate parental rights under similar circumstances in *In the Matter of A.L.R.*, 2002 MT 183, 311 Mont. 76, 54 P.3d 17. In that case, the record indicated that the appellant parent failed to comply with or complete the requirements of a treatment plan prepared by Jefferson County. She failed to show up for visits with her children and did not seek treatment for her drug and alcohol problem. *A.L.R.*, ¶¶ 16-18. In addition, she was convicted of manufacturing methamphetamine in her apartment. Affirming the trial court's termination of parental rights, we concluded that the appellant was "unlikely to make significant progress within a reasonable time to meet the children's needs . . . ." *A.L.R.*, ¶ 20.

¶19 In the present case, the District Court's conclusion that Vernal has not made changes of a sustained nature that would allow him to safely parent M.D.M. is correct. Vernal's failure to successfully complete his treatment plans, when coupled with his continuous criminal activity, is reason enough to terminate his parental rights. Based on *A.L.R.* and the

8

facts of this case, we conclude that the statutory criteria for terminating Vernal's parental rights were met.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ TERRY N. TRIEWEILER
/S/ PATRICIA COTTER
/S/ JIM RICE