FILED

03/13/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0487

DA 17-0487

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2018 MT 46N

IN THE MATTER OF:

A.F.,

       A Youth in Need of Care.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDN 15-230
Honorable Elizabeth Best, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Jennifer Dwyer, Law Office of Jennifer Dwyer, PLLC, Bozeman, Montana

       For Appellee:

       Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant Attorney General, Helena, Montana

       Joshua A. Racki, Cascade County Attorney, Valerie Winfield, Deputy County Attorney, Great Falls, Montana

Submitted on Briefs: February 14, 2018

Decided: March 13, 2018

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 J.B. appeals the order from the Eighth Judicial District Court, Cascade County, terminating her parental rights to her child A.F. We affirm.

¶3 J.B. (Mother) is the birth mother of three children, A.F. and twin boys Kr.B. and Ka.B.[1] In September 2015, the three children were removed from the home of Mother and the birth father of the twins, R.B., after law enforcement found two-year-old Kr.B. wandering in a parking lot without supervision. Initial filings in the District Court from the Montana Department of Public Health and Human Services, Child and Family Services Division (the Department) cited the parents' drug use, as well as unsanitary and unhealthy conditions in the family's apartment.

¶4 The Department's initial pleadings indicated that all three children were, or may be, Indian children, with familial affiliation with the Northern Cheyenne Tribe. From the beginning, the twins' father reported that he is affiliated with the Northern Cheyenne Tribe. Later in the proceedings, Mother reported that she was affiliated with the Little Shell Tribe and with the Chippewa Cree Tribe of the Rocky Boy's Reservation. Mother has never

---

[1] Mother's appeal of termination of her rights to Kr.B. and Ka.B. is pending in separate appeals, case numbers DA 17-0485 and DA 17-0486, respectively.

claimed any affiliation with the Northern Cheyenne Tribe. A.F.'s birth father, T.F., has not reported any tribal affiliation. Throughout the proceedings, the District Court proceeded as if the Indian Child Welfare Act (ICWA) applied to all three children.

¶5 After a hearing at which an ICWA expert testified, the District Court terminated Mother's parental rights to all three of her children. The court found by proof beyond a reasonable doubt that the children were Youths in Need of Care; that Mother failed to complete her court-ordered treatment plan; that the conduct or condition rendering Mother unfit was unlikely to change within a reasonable time; and that returning the children to Mother likely would result in serious emotional or physical damage to the children. The court did not make a written finding that the Department make active efforts to prevent the breakup of the Indian family pursuant to 25 U.S.C. § 1912(d).

¶6 We review for abuse of discretion a district court's termination of parental rights. *In re D.B.*, 2007 MT 246, ¶ 16, 399 Mont. 240, 168 P.3d 691. We review a district court's findings of fact for clear error and its conclusions of law for correctness. *In re D.B.*, ¶ 18.

¶7 Mother argues that the District Court abused its discretion because the termination proceeding violated the requirements of ICWA. Specifically, she argues that the Department failed to properly notify the Northern Cheyenne Tribe of A.F.'s termination proceedings. She argues further that the Department failed to prove beyond a reasonable doubt that it made active efforts to prevent the breakup of the Indian family or that her condition was unlikely to change within a reasonable time.

¶8 Mother argues that the District Court violated ICWA when it terminated her parental rights to A.F. because the Northern Cheyenne Tribe was not notified of the termination

hearing and only the Northern Cheyenne Tribe may make a determination that A.F. is not a member or eligible for membership in that tribe.

¶9 ICWA requires that a state court provide notice of termination proceedings to "the Indian child's tribe." *See* 25 U.S.C. 1912(a). "The Indian Tribe *of which it is believed the child is a member* (or eligible for membership and of which the biological parent is a member) determines whether the child is a member of the Tribe, or whether the child is eligible for membership." 25 C.F.R. § 23-108(a) (emphasis added). The Department sent notice of the termination hearing to the Little Shell and Chippewa Cree Tribe of the Rocky Boy's Reservation—the two tribes with which Mother reported potential affiliation. The Department was not required to send notice to the Northern Cheyenne Tribe of the proceedings to terminate parental rights to A.F., because nothing in the record demonstrated that the Northern Cheyenne Tribe was an "Indian Tribe of which it is believed the child is a member." *See* 25 C.F.R. § 23-108(a). R.B. reported an affiliation with the Northern Cheyenne Tribe, but R.B. is not A.F.'s biological father. Neither A.F.'s biological father nor Mother reported any tribal affiliation or potential tribal affiliation with the Northern Cheyenne Tribe.

¶10 Mother next argues that the District Court abused its discretion when it terminated her parental rights because the Department failed to prove every statutory requirement beyond a reasonable doubt. Under Montana law, a district court may terminate parental rights if a child is adjudicated a Youth in Need of Care, an appropriate treatment plan has been approved by the court, the parent has not complied with the treatment plan or it has not been successful, and the conduct or condition of the parent rendering the parent unfit

4

is unlikely to change within a reasonable time. Section 41-3-609(1)(f), MCA. ICWA requires additionally that the Department engage in "active efforts . . . to prevent the breakup of the Indian family" and that the District Court make a finding that the child would suffer "serious emotional or physical damage" if the parent maintains custody. 25 U.S.C. 1912(d), (f). Under ICWA, the Department must prove all statutory requirements for parental termination beyond a reasonable doubt. *See* 25 U.S.C. 1912(f). Because the parties and the District Court treated the case on the assumption that ICWA governed the proceedings for all three children, we review the merits of Mother's argument.

¶11 Mother first argues that the District Court did not find that the Department engaged in active efforts. Active efforts require the Department to do more than provide a treatment plan and passively wait for the parent to comply with the plan. *See In re D.S.B.*, 2013 MT 112, ¶ 15, 370 Mont. 37, 300 P.3d 702. But ICWA "requires only that timely affirmative steps be taken to accomplish the goal which Congress has set: to avoid the breakup of Indian families whenever possible by providing services [designed] to remedy problems which might lead to severance of the parent-child relationship." *In re M.S.*, 2014 MT 265A, ¶ 25, 378 Mont. 394, 336 P.3d 930 (quoting *In re G.S.*, 2002 MT 245, ¶ 36, 312 Mont. 108, 59 P.3d 1063).

¶12 At trial, numerous professionals who had worked with Mother provided testimony detailing her failure to make progress toward addressing her chemical dependency. Child Protection Specialist Supervisor Micaela Stroop and Child Protection Specialist Laura Evenson testified to the Department's numerous efforts to provide remedial services and rehabilitative programs for Mother, including referring her to inpatient treatment at

5

Montana Chemical Dependency Center (MCDC) twice, providing her with a choice of providers for treatment and drug testing not regularly provided to other parents, and accompanying Mother to court to get a warrant quashed so that she could go to inpatient treatment. At the close of trial, the District Court explained "that the Department has bent over backward to work with [Mother] to provide [her] with services that are in some cases unique but certainly going the extra mile in providing for choices of providers, choices of even test facilities, which is remarkable."

¶13    Mother correctly points out that the District Court did not issue a written finding that the Department engaged in active efforts. Even if a district court's written order fails to make a specific finding on an ICWA requirement, we will uphold the district court's decision if the finding "is certainly implicit in the court's statements." *In re M.R.G.*, 2004 MT 172, ¶ 16, 322 Mont. 60, 97 P.3d 1085 (quoting *In re M.D.M.*, 2002 MT 305, ¶ 16, 313 Mont. 51, 59 P.3d 1142). Based on the discussion above, "a reasonable trier of fact could have concluded that the Department made sufficient active efforts to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family." *In re M.S.*, ¶ 27. And the District Court indeed recognized the Department's active efforts when it stated that the Department "bent over backward" and went "the extra mile" to work with Mother. This case differs from *In re K.B.*, 2013 MT 133, 370 Mont. 254, 301 P.3d 836, in which we remanded the case for a new hearing. We remanded that case due to multiple failures to meet ICWA requirements, including the failure to notify the tribe of the termination hearing, the insufficiency of the qualified expert witness testimony, and the failure by the State and the district court to address whether ICWA's heightened standard

for active efforts was met. Unlike in *In re K.B.*, the Department presented testimony from Stroop and Evenson that detailed the active efforts the Department took, and the District Court acknowledged those active efforts in its oral pronouncement. The failure to include its findings in the written order does not warrant remand in this case.

¶14 Finally, Mother argues that the District Court abused its discretion in finding that her condition was unlikely to change within a reasonable time. She points to testimony from the ICWA-qualified expert witness, Anna Fisher, that Native American parents take a longer amount of time "to engage in almost anything" and, specifically, a longer amount of time to resolve chemical dependency issues. Fisher also explained that tribes favor extending time for the parents to continue to seek treatment. Mother points also to the testimony of Julie Messerly, an addiction counselor, who stated that if Mother fully engaged in treatment she could be in a position to manage her addiction in seven to eight months.

¶15 When determining whether the conduct or condition rendering a parent unfit is unlikely to change within a reasonable time, the court considers the "excessive use . . . of a narcotic or dangerous drug that affects the parent's ability to care and provide for the child." Section 41-3-609(2), MCA. The district court also "should assess a parent's past and present conduct." *In re D.H.*, 2001 MT 200, ¶ 32, 306 Mont. 278, 33 P.3d 616.

¶16 Mother's argument essentially asks us to reweigh the evidence presented to the District Court. However, this Court will not reweigh conflicting evidence or substitute its judgment regarding the strength of the evidence for that of the District Court's judgment.

*In re A.N.W.*, 2006 MT 42, ¶ 29, 331 Mont. 208, 130 P.3d 619. Rather, we review a District Court's findings of fact for clear error. *In re D.B.*, ¶ 18.

¶17 Mother's argument does not address the evidence supporting the District Court's finding. In her testimony, Messerly explained that success in seven to eight months would be extremely difficult and would be complicated by Mother's continued relationship with the twins' father, who also used methamphetamines. Fisher testified that, in her opinion, Mother's continued custody of A.F. likely would result in serious emotional or physical damage to the child. Multiple treatment providers testified to Mother's repeated failure to follow through on her chemical dependency therapy. Stroop testified to Mother's failure to comply with her treatment plan. Further, Mother had left inpatient treatment twice after only a few days—the last time, shortly before the termination hearing. The District Court's decision was supported by substantial evidence, the court did not misapprehend the effect of the evidence, and our review of the record does not leave a definite and firm conviction that the District Court erred. The District Court did not abuse its discretion in finding that Mother's condition was unlikely to change in a reasonable time.

¶18 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's ruling was not an abuse of discretion. The judgment is affirmed.

/S/ BETH BAKER

8

We Concur:

/S/ MIKE McGRATH
/S/ DIRK M. SANDEFUR
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE