FILED

02/10/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0585

DA 25-0585

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 18

IN THE MATTER OF:

M.L.O.-L.,

    A Youth in Need of Care.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DN-23-16
Honorable Jason T. Marks, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Marybeth M. Sampsel, Measure Law, PC, Kalispell, Montana

    For Appellee:

        Austin Knudsen, Montana Attorney General, Katie F. Schulz, Assistant Attorney General, Helena, Montana

        Matthew C. Jennings, Missoula County Attorney, Julie Brown, Deputy County Attorney, Missoula, Montana

Submitted on Briefs:  January 28, 2026

Decided:  February 10, 2026

Filed:

_____
Clerk

Justice Katherine Bidegaray delivered the Opinion of the Court.

¶1 Intervenor, M.L.O.-L.'s maternal grandmother, timely appeals from the September 30, 2025 "Order Approving Permanency Plan and Denying Intervenor's Request for Placement" of M.L.O.-L. entered by the Fourth Judicial District Court, Missoula County. We address the following restated issue:

*Whether the District Court abused its discretion by approving adoption as the permanency plan and denying Intervenor Grandmother's request for placement of M.L.O.-L.*

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 M.L.O.-L. was born in June 2018. In February 2023, the Montana Department of Public Health and Human Services (Department) removed M.L.O.-L. and her two siblings from their mother's care due to concerns of neglect and abuse. The Department initially placed all three children with their maternal grandmother, W.R. (Grandmother), in a kinship placement. Almost immediately after the placement, the oldest sibling ran away and was placed in a group home. Approximately one month later, Grandmother requested that the Department remove the remaining children from her home. The Department subsequently placed M.L.O.-L. and her younger brother in a licensed foster home in March 2023.

¶3 In June 2023, the Department removed the children from that foster home and placed them with J.D., a licensed foster care provider. M.L.O.-L. has remained continuously in J.D.'s care since then. In February 2024, the siblings were separated when the younger brother was removed from J.D.'s home and hospitalized in Shodair Children's

Hospital after J.D. raised concerns regarding the brother's behavior toward M.L.O.-L. Following the brother's discharge from Shodair Children's Hospital in May 2024, the brother was placed with Grandmother, where he remains. M.L.O.-L. remained with J.D.

¶4 Throughout the pendency of the abuse and neglect proceedings, the District Court conducted multiple hearings addressing placement, permanency, and termination. On April 25, 2024, the court heard testimony from J.D., Grandmother, and the children's mother regarding placement. On October 24 and 25, 2024, the court held a contested termination hearing, during which it heard testimony from, among others, M.L.O.-L.'s licensed therapists, Grandmother, and witnesses offered on Grandmother's behalf. Following that hearing, the District Court terminated the parental rights of the mother and unknown putative father and granted the Department permanent legal custody of M.L.O.-L. with authority to consent to adoption.

¶5 After termination of parental rights, Grandmother moved for placement of M.L.O.-L., arguing that the Department had failed to establish good cause to deviate from statutory placement preferences favoring extended family placement and requesting an additional placement hearing. The Department opposed the motion, asserting that a change in placement would jeopardize the child's emotional and psychological wellbeing. M.L.O.-L., through counsel, also opposed the motion, expressing her desire to remain with J.D. and to be adopted by her.

¶6 The District Court held a contested hearing on Grandmother's motion on January 29, 2025. At that hearing, the court heard testimony from M.L.O.-L.'s licensed clinical social worker and her family therapist, both of whom testified to a reasonable

3

degree of professional certainty that removing M.L.O.-L. from J.D.'s care would be extremely detrimental to her mental health. The family therapist testified that M.L.O.-L. was receiving ongoing treatment for a disorganized attachment disorder and had formed a healthy and secure attachment to J.D., and that disrupting that attachment would negatively affect her treatment and emotional stability.

¶7 On February 28, 2025, the District Court issued a written order denying Grandmother's motion for placement and declining to hold further placement hearings absent a material change in circumstances. The court concluded that, although Grandmother qualified as extended family under the placement preference statutes, good cause existed to depart from those preferences due to M.L.O.-L.'s extraordinary mental and emotional needs and the risk of harm associated with a placement change. The court expressly relied on §§ 41-3-450 and -451, MCA, and on professional testimony establishing that continued placement with J.D. was necessary to protect the child's health and safety.

¶8 In June 2025, the Court Appointed Special Advocate (CASA) filed a special report addressing M.L.O.-L.'s best interests. The CASA reported that M.L.O.-L. had lived with J.D. since June 2023 and had flourished in that placement, making significant developmental, emotional, and academic progress. The CASA described J.D. as an "extraordinary foster parent" and emphasized the importance of continuity and stability for a child who had experienced significant trauma.

¶9 The CASA report further documented that M.L.O.-L. expressed distress and regression surrounding visits with Grandmother, including fear of being removed from her

4

current home, refusal to participate in visits or calls, and behavioral regression following contact. The CASA relayed observations from both children's therapists that continued separation of the siblings was necessary for safety and emotional wellbeing, and that any reunification would require careful therapeutic supervision. The CASA ultimately recommended that M.L.O.-L. remain in her current placement with J.D. and not be moved.

¶10 On September 30, 2025, the District Court entered its "Order Approving Permanency Plan and Denying Intervenor's Request for Placement." In that order, the court expressly incorporated its February 28, 2025 "Order Denying Motion for Placement" and relied on the CASA report in approving the permanency plan and denying Grandmother's renewed request for placement. The court concluded that the statutory requirements for permanency had been satisfied and that continued placement with J.D. was in M.L.O.-L.'s best interests. Grandmother appeals from the September 30, 2025 order, challenging the District Court's denial of her request for placement and its approval of the permanency plan.

¶11 Grandmother contends the District Court erred by denying placement without applying the correct statutory framework governing abuse and neglect proceedings and without making adequate findings explaining why it denied placement with a relative— specifically, the maternal grandmother. Grandmother further argues the court improperly relied on a "change in circumstances" analysis drawn from family law rather than Title 41, chapter 3, MCA. Although the District Court articulated its reasoning imprecisely, its findings and the record demonstrate that it considered Grandmother's placement request

5

under the controlling best-interests, permanency, and placement standards. The court therefore did not abuse its discretion. We affirm.

## STANDARD OF REVIEW

¶12 We review a district court's permanency determinations in abuse and neglect proceedings for abuse of discretion. *In re D.B.*, 2007 MT 246, ¶ 16, 339 Mont. 240, 168 P.3d 691. A district court abuses its discretion when it acts arbitrarily, without conscientious judgment, or exceeds the bounds of reason, resulting in substantial injustice. *In re A.B.*, 2020 MT 64, ¶ 23, 399 Mont. 219, 460 P.3d 405. We review lower court findings of fact for clear error and conclusions of law for correctness. *In re D.F.*, 2007 MT 147, ¶¶ 21-22, 337 Mont. 461, 161 P.3d 825.

## DISCUSSION

¶13 *Whether the District Court abused its discretion by approving adoption as the permanency plan and denying Intervenor Grandmother's request for placement of M.L.O.-L.*

## I. Alleged Reliance on a "Change in Circumstances" Standard

¶14 Abuse and neglect proceedings are governed by Title 41, chapter 3, MCA. At a permanency hearing, the district court must determine a permanency plan that serves the child's best interests, giving primary consideration to the child's physical, mental, and emotional needs and to the child's need for stability and continuity of care. Sections 41-3-438, -445, MCA. The child's health and safety are of paramount concern. Section 41-3-101(7), MCA.

¶15 Montana law expresses a preference for placement with relatives when doing so is in the child's best interests. Section 41-3-450(1), (3), MCA. That preference, however, is

6

not a presumption or entitlement. Relative placement must be considered and addressed, but it remains subordinate to the child's best interests and permanency needs. The Legislature has expressly provided that placement preferences do not apply when good cause exists, including when the child's extraordinary physical, mental, or emotional needs require a particular placement. Section 41-3-451(1)(d), MCA.

¶16 Although the District Court's February 28, 2025 "Order Denying Motion for Placement" incorrectly cited "§ 41-3-450(1)(d), MCA (2023)," the court quoted and applied the operative exception language from § 41-3-451(1)(d), MCA (2023), which permits departure from placement preferences when a child's extraordinary physical, mental, or emotional needs require a particular placement. An incorrect statutory citation does not constitute reversible error when the court's findings track the correct statutory standard and are supported by the record. *See, e.g.*, *In re M.D.M.*, 2002 MT 305, ¶¶ 16-19, 313 Mont. 51, 59 P.3d 1142 (court's failure to expressly state that party met its burden of proof was not fatal to decision where the court's statements demonstrated it understood and applied the correct standard (citing § 1-3-219, MCA ("the law respects form less than substance")). Here, the court's findings—grounded in expert testimony regarding M.L.O.-L.'s attachment disorder and trauma history—squarely satisfy § 41-3-451(1)(d), MCA.

¶17 Grandmother argues that the District Court applied an incorrect legal framework by relying on a family-law concept of "change in circumstances," rather than the permanency

standards set forth in Title 41, chapter 3, part 4, MCA.[1] In support, Grandmother points to language in the District Court's September 30, 2025 "Order Approving Permanency Plan and Denying Intervenor's Request for Placement," in which the court stated it was "not persuaded that a change in circumstances has occurred such that the findings in its previous orders should now be reversed" and it had not "heard any new evidence that causes it to change its previous findings." Grandmother contends that this language demonstrates the District Court improperly imported a domestic-relations modification standard into an abuse and neglect proceeding and, as a result, failed to conduct the analysis required at a permanency hearing under § 41-3-445, MCA.

¶18 Grandmother is correct that a "change in circumstances" is not the governing legal standard at a permanency hearing. Permanency determinations in abuse and neglect proceedings are controlled by statute, not by family-law modification principles. *See* § 41-3-101, MCA (declaring Montana's policy in child abuse and neglect cases); § 41-3-103 (addressing jurisdiction and venue in child abuse and neglect cases); *compare* § 40-4-211, MCA (addressing jurisdiction and commencement of parenting proceedings); § 40-4-219(1), MCA (addressing amendment of parenting plans and providing, "[t]he court may in its discretion amend a prior parenting plan if it finds, upon the basis of facts that have arisen since the prior plan or that were unknown to the court at the time of entry of the prior plan, that a change has occurred in the circumstances of the child and that the

---

[1] The Department argues that the District Court erred in granting intervenor status to Grandmother. Because the Department did not file a cross-appeal, we do not consider that argument. *See* M. R. App. P. 4(5).

amendment is necessary to serve the best interest of the child"). At the permanency stage, the court's task is to determine whether the proposed permanency plan and placement serve the child's best interests at that time, giving primary consideration to the child's health, safety, and need for stability. Sections 41-3-438, -445(1), MCA.

¶19 However, imprecise terminology does not require reversal where the record demonstrates that the District Court applied the correct substantive standards. Although the District Court's phrasing was imprecise, the order as a whole demonstrates application of the correct statutory standards and does not require reversal. A district court's failure to use ideal language or to cite the precise statutory provision is not reversible error if the court's findings and the evidentiary record reflect application of the correct legal framework. *In re M.D.M.*, ¶¶ 16-19.

¶20 Here, when the District Court's September 30, 2025 order is read in context and together with the February 28, 2025 "Order Denying Motion for Placement"—which the court expressly incorporated in full—it is clear that the court did not treat Grandmother's request as a family-law modification motion. Rather, the court relied on prior, detailed findings made after a contested evidentiary placement hearing that addressed the statutory considerations governing placement and permanency under Title 41.

¶21 In its February 28, 2025 order, the District Court analyzed Grandmother's placement request under §§ 41-3-450 and -451, MCA, and concluded, based upon testimony from M.L.O.-L.'s licensed clinical social worker and family therapist regarding her attachment disorder, trauma history, and the anticipated harm of a placement disruption, that good cause existed to depart from relative placement because M.L.O.-L.'s

9

extraordinary mental and emotional needs required a particular placement. The court relied on professional testimony establishing that disrupting M.L.O.-L.'s long-standing placement would be extremely detrimental to her psychological wellbeing and contrary to her best interests. Those findings directly satisfy the permanency requirements of § 41-3-445(6)(b) and (e), MCA, including the requirement that the court determine whether compelling reasons exist why placement with a fit and willing relative would not be in the child's best interests.

¶22 Against that backdrop, the District Court's reference to a lack of "change in circumstances" did not supply the legal standard for its decision. Instead, it reflected the court's conclusion that no new evidence had been presented that undermined or called into question its prior, statutorily grounded findings regarding M.L.O.-L.'s needs, safety, and best interests. The court's analysis remained focused on permanency, stability, and the child's welfare—not on whether Grandmother had met a family-law threshold for modification.

¶23 Accordingly, while we do not endorse the use of family-law terminology in abuse and neglect proceedings, the District Court's imprecise phrasing does not require reversal under our de novo standard of review for application of governing legal standards. The court applied the correct substantive framework under Title 41, chapter 3, part 4, MCA, meaningfully considered Grandmother's placement request, and exercised reasoned discretion in determining that continued placement with J.D. best served M.L.O.-L.'s interests at the permanency stage.

## II. Adequacy of Permanency Findings Under § 41-3-445(6), MCA

¶24 Grandmother next argues that the District Court's permanency findings were legally inadequate under § 41-3-445(6), MCA, because the court relied on findings from its February 28, 2025 placement order rather than making contemporaneous findings at the permanency hearing. We disagree.

¶25 Section 41-3-445(6), MCA, requires the court to make written findings regarding the child's best interests, reasonable efforts, and whether compelling reasons exist not to place the child with a fit and willing relative. The statute does not prohibit a court from incorporating prior findings, so long as the court makes a present determination that the permanency plan satisfies those statutory criteria.

¶26 Here, the District Court expressly approved adoption as the permanency plan and denied Grandmother's renewed placement request. Importantly, Grandmother did not object to adoption as a permanency option under § 41-3-445(8)(c), MCA; she objected only to adoption by J.D. and sought placement with herself. The court's incorporation of its February 28, 2025 findings did not substitute for permanency findings but informed its contemporaneous determination that adoption by J.D. served M.L.O.-L.'s best interests and that compelling reasons existed not to place the child with Grandmother. Those findings satisfy § 41-3-445(6)(b) and (e), MCA.

## III. Reasonable Efforts Determination

¶27 Grandmother further argues that the District Court's finding that the Department made reasonable efforts to finalize the permanency plan is clearly erroneous because the record reflects a lapse in sibling therapy, abandoned phone-contact arrangements,

and unimplemented recommendations to maintain family connections during the post-termination period.

¶28 Section 41-3-445(6)(c) and (d), MCA, requires the court to determine whether the Department made reasonable efforts to effectuate and finalize the permanency plan for the individual child. Reasonable efforts, however, do not require perfection, nor do they mandate implementation of every recommended service when professional judgment indicates such services may be therapeutically inappropriate. *See In re C.G.M.*, 2020 MT 15, ¶ 17, 398 Mont. 369, 456 P.3d 1017 ("the analysis of reasonable efforts is highly fact dependent"—the department "must make reasonable efforts to reunite parents with their children, not herculean efforts" (citations omitted)).

¶29 The District Court heard testimony explaining that certain sibling contacts and therapeutic interventions were paused or modified due to safety concerns and M.L.O.-L.'s emotional wellbeing. The court was entitled to credit that testimony. Viewed in light of the child-specific risks identified by the therapists and CASA, the evidence cited by Grandmother does not leave us with a definite and firm conviction that the District Court made a mistake. The court's reasonable-efforts finding is therefore not clearly erroneous.

### IV. No Abuse of Discretion

¶30 Viewed under the correct statutory framework, the District Court's decision falls within the bounds of reasoned discretion. Although the court referenced a "change in circumstances," its incorporated findings and the evidentiary record demonstrate that it evaluated Grandmother's request under the controlling permanency and best-interests standards set forth in Title 41, chapter 3, MCA.

¶31 The court meaningfully considered Grandmother's request for placement, acknowledged her relationship to M.L.O.-L. and the sibling placement, and articulated child-specific reasons for denying placement. Montana law provides placement preferences but does not require placement with a relative merely because the relative is willing or because a sibling resides there, nor must a court find a relative unfit to deny placement. *See* § 41-3-450, MCA (listing placement preferences that apply "unless there is a determination under 41-3-451 that good cause exists to not follow the placement preferences or unless the placement is governed by the federal Indian Child Welfare Act or the Montana Indian Child Welfare Act"). Although § 41-3-450(3)(a)(i), MCA, directs courts to consider sibling attachment, the record here established that maintaining sibling placement was not therapeutically appropriate and posed a risk to M.L.O.-L.'s safety and emotional wellbeing, thereby supporting the court's determination of good cause under § 41-3-451(1)(d), MCA. The determinative question is whether placement advances the child's best interests at the time of the permanency decision.

¶32 Here, substantial evidence—including expert testimony and the CASA report— supported the District Court's conclusion that disrupting M.L.O.-L.'s long-standing placement with J.D. would be harmful and contrary to her emotional and psychological needs. The court's findings substantively tracked the statutory considerations governing permanency and placement, notwithstanding its imprecise terminology.

¶33 We review a district court's decision, not its reasoning in isolation. Because the District Court applied the correct substantive standards and reached a result supported by the record and Montana law, its imprecise articulation does not require reversal.

13

**CONCLUSION**

¶34 The District Court considered the governing statutory factors, made sufficient findings to address Grandmother's placement request, and did not abuse its discretion in approving the permanency plan and denying placement with Grandmother. The order is affirmed.

/S/ KATHERINE M. BIDEGARAY

We Concur:

/S/ CORY J. SWANSON
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON