Filed 5/13/22  In re J.H. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re J.H. et al., Persons Coming Under the Juvenile Court Law. | B315480 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19CCJP01201E & F) |
| Plaintiff and Respondent, | |
| v. | |
| J.P., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Robin R. Kesler, Juvenile Court Referee.  Affirmed.

Christine E. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Kelly Emling, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Mother J.P. appeals the juvenile court's order terminating her parental rights to children J.H. and A.H., raising only one claim of error, that the Los Angeles County Department of Children and Family Services (Department) made an inadequate inquiry under the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.).  We affirm.

## BACKGROUND

Mother's six children were detained after concerns of neglect were reported by the children's school, and the Department's investigation revealed domestic violence between mother and father, and other serious safety issues.

The petition states the children have no known Indian ancestry, and that mother and father denied any Indian ancestry during an interview on January 10, 2019.  The detention report confirms that both mother and father denied that they or the children have any Indian heritage.

At the February 25, 2019 detention hearing, mother and father filed parental notification of Indian status forms (ICWA–020) indicating "I have no Indian ancestry as far as I know."  Paternal relatives were present at the detention hearing, including paternal grandmother, paternal grandfather, and paternal great-aunt.  The juvenile court stated on the record "there is no reason to know this is a case involving the Indian Child Welfare Act as to either parent," and no relative present at the hearing spoke up to say anything to the contrary.  The minute order from the hearing recites that the "[p]arents are to keep the Department, their Attorney and the Court aware of any new information relating to possible ICWA status."  A similar admonition is recited on the ICWA–020 forms.  At no time did any of the children's relatives notify the Department or the court of any possible Indian heritage.

The Department's reports refer to numerous relatives whom the parents mentioned during interviews with the Department, including maternal grandmother, maternal grandfather, and eight maternal

2

aunts and uncles.  Of these relatives, the Department had contact with maternal grandfather D.P. and one maternal aunt, R.H.  The reports also mention paternal grandmother, paternal grandfather, three paternal aunts, two paternal great-aunts, cousins, and some other "relatives" of unspecified relationship.  Many of these relatives were unnamed, and the record does not reflect whether any relatives who were interviewed were asked about possible Indian ancestry.  However, it is clear that mother and father were in contact with a great number of family members during the dependency, and neither parent reported that they had reason to believe a relative had Indian ancestry.

On September 7, 2021, the juvenile court terminated mother's and father's parental rights to J.H. and A.H.  This timely appeal followed.

**DISCUSSION**

Congress enacted ICWA " 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families.' " (*In re Isaiah W.* (2016) 1 Cal.5th 1, 8.)  Welfare and Institutions Code section 224.2 imposes on the juvenile court and the Department "an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child . . . ." (*Id.*, subd. (a).)  "The duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (*Ibid*.)  "If a child is placed into the temporary custody of a county welfare department[, the department] has a duty to inquire whether that child is an Indian child[, including] asking the child, parents, . . . extended family members, [and] others" whether the child is or may be an Indian child.  (*Id.*, subd. (b).)

The adequacy of the ICWA inquiry is reviewed for sufficiency of the evidence.  (*In re S.B.* (2005) 130 Cal.App.4th 1148, 1160–1162.)  However, the standard for determining whether an ICWA error

3

requires reversal is unsettled. (See *In re S.S.* (2022) 75 Cal.App.5th 575, 581–582 ["[s]ome courts [require] an appellant who asserts a breach of the duty of inquiry to . . . make an offer of proof or other affirmative assertion of Indian heritage on appeal"]; *In re Y.W.* (2021) 70 Cal.App.5th 542, 556 [rejecting that parents must demonstrate prejudice or make an offer of proof of Indian ancestry to demonstrate reversable ICWA error]; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744 [articulating yet a different test for prejudice where a "court must reverse where the record demonstrates that the agency . . . failed in its duty of initial inquiry [and] where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child"].)

Mother argues the Department made an inadequate initial inquiry because it did not ask the initial reporter or the numerous relatives identified in the Department's reports about possible Indian ancestry, and therefore the juvenile court's finding that ICWA did not apply is not supported by substantial evidence. She also argues that she is not required to demonstrate prejudice, relying on *In re Y.W.*, *supra*. Alternatively, she argues "it is likely that 'there was readily obtainable information that was likely to bear meaningfully upon whether the [children were] Indian child[ren].' " (*In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) She recites no facts to support this contention. At no point has mother ever asserted any fact that might suggest the mandated reporter from the children's school or any relative might have any information that her children may have Indian ancestry.

This case is nothing like *In re. Y.W.*, where the mother, who was adopted, denied she had any Indian ancestry, but also denied having any information about her biological relatives. Mother's adoptive mother stated she also had no information about any possible Indian ancestry but said she had the names and/or contact information for biological relatives. The Department failed to follow up with

4

biological relatives, and the Court of Appeal remanded for further ICWA compliance. (*In re Y.W.*, *supra*, 70 Cal.App.5th 542.) Here, the record does not give any indication that mother's or father's denial of Indian ancestry was uninformed or unreliable, especially where many maternal and paternal relatives were identified by the parents in the Department's reports.

This case is also nothing like *In re Benjamin M.*, where the court found prejudicial error where one parent was not available to report or deny Indian ancestry, and the Department never inquired of the missing parent's available relatives. (*In re Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 744–745.) Here, both parents were available and unequivocally denied any Indian ancestry.

Lastly, we do not find the analysis in *In re H.V.* (2022) 75 Cal.App.5th 433 persuasive, where the court conditionally affirmed and remanded for further ICWA inquiry when there was no indication whatsoever that the mother's denial of Indian ancestry was inaccurate.

We therefore reject mother's "unvarnished contention that additional interviews of [relatives] would have meaningfully elucidated the children's Indian ancestry." (*In re Darian R.* (2022) 75 Cal.App.5th 502, 510.)[1]

---

[1]    The dissent argues we cannot determine if the error is harmless because we do not know what extended family members would say. But we do have reason to believe we know what they would say because the children's parents have certified they have no information that Indian heritage exists in their lineage. And harmless error does not equate with absolute certainty. Courts routinely hold that failing to admit certain evidence was harmless error, even though the possibility exists that the evidence might strike a particular juror differently than the reviewing court. The only way to know for sure is to retry every case where there is error. That approach itself results in frequent needless harm, delay and expense, which is why the harmless error doctrine ultimately results in a just outcome.

5

**DISPOSITION**

The order terminating parental rights is affirmed.


GRIMES, Acting P. J.

I CONCUR:


HARUTUNIAN, J.*

---

\*      Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**WILEY, J., Dissenting.**

The Department communicated with maternal relatives but did not ask about Indian heritage. The law requires this step. I do not know whether the Department's error was harmless because I do not know what these people would have said. It is undesirable to suggest the less the Department investigates, the more harmless its error.

Appellants must not bring appeals like this solely for delay. The Department, however, can eliminate or reduce delay by complying with its statutory obligations.

WILEY, J.

1