Filed 11/30/23  In re E.M. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re E.M. et al., Persons Coming Under the Juvenile Court Law. | B318653<br><br>(Los Angeles County<br>Super. Ct. No. DK21526A–B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>A.T.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephanie Davis, Juvenile Court Referee. Affirmed.

Donna P. Chirco, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

───────────────────

A.T. (mother) appeals from a juvenile court order selecting a permanent plan of legal guardianship for children E.M. and A.M. Mother's sole contention is that the order, issued pursuant to Welfare and Institutions Code section 366.26,[1] must be reversed because the Los Angeles County Department of Children and Family Services (DCFS) failed to give notice of the hearing to the Fernandeño Tataviam Band of Mission Indians (the tribe or Tataviam tribe). The Tataviam tribe is not a federally recognized tribe. Although mother concedes the Indian Child Welfare Act (ICWA) does not apply in this case, she asserts notice was required under section 306.6, which permits the juvenile court to allow a non-federally recognized tribe limited participation in dependency proceedings. We conclude mother forfeited her argument by not raising it below, and, even if not forfeited, we would conclude her claim fails on the merits.

**FACTUAL AND PROCEDURAL BACKGROUND**

In light of the limited issue mother raises on appeal, we provide only a brief summary of the background of this case.

E.M. came to the attention of DCFS in May 2016, after it received a report that mother and father had engaged in domestic

─────────────

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

violence in front of E.M., who was then five years old.  DCFS opened an investigation.  In June 2016, mother tested positive for methamphetamine, amphetamine, and marijuana.  Father tested positive for marijuana.  The parents agreed to participate in voluntary family preservation services.  In February 2017, mother again tested positive for methamphetamine.  She also failed to comply with the plan for voluntary services.

In March 2017, DCFS filed a section 300 petition on behalf of E.M., based on the parents' domestic violence and substance abuse.  The court removed E.M. from mother, but he remained in father's care.  In May 2017, the court sustained the petition and declared E.M. a dependent of the court.  The court allowed E.M. to remain in father's custody and ordered services for both parents.  The same month, mother and father had a second child, A.M.

Both parents were incarcerated in July 2017 due to father's hit-and-run accident that caused the death of a child.  Although mother was not involved in the accident, she told DCFS that she was arrested for "hiding" father.

In August 2017, DCFS filed a section 342 petition on behalf of E.M. and a section 300 petition on behalf of A.M.  The section 342 petition alleged there was no one to care for E.M. because both parents were incarcerated.  The section 300 petition alleged A.M. was at risk of harm due to the parents' prior domestic violence and substance abuse.  The juvenile court detained both children.

In October 2017, DCFS reported father had been sentenced to 25 years in prison and mother to three years of probation.  The adjudication and disposition hearings were continued multiple times.  In November 2018, the juvenile court sustained portions

of the pending section 300 and 342 petitions, declared A.M. a dependent of the court, ordered E.M. to remain a dependent of the court, and removed both children from the parents' custody. DCFS eventually placed the children with paternal great aunt, D.M. The juvenile court denied father reunification services pursuant to section 361.5, subdivision (e)(1). In July 2019, the juvenile court terminated mother's reunification services and set a section 366.26 hearing.

In November 2019, DCFS filed a section 366.26 report recommending that the court appoint D.M. as the children's legal guardian and terminate jurisdiction. After several continuances, the court eventually held a section 366.26 hearing for both children on February 14, 2022.[2] Father did not appear, but indicated through counsel that he agreed with the plan of legal guardianship with D.M. Mother objected to legal guardianship and to monitored visitation. The court found that although the children were adoptable, an exception to adoption applied because the children were living with a relative who was unwilling or unable to adopt them but was willing to provide them a home through guardianship. D.M. was selected as the legal guardian.

---

[2] The juvenile court took the section 366.26 hearings off calendar after father's successful appeal of the jurisdiction and disposition orders as to A.M., and after mother filed a section 388 petition to change court orders. In father's appeal, we reversed the juvenile court's order asserting dependency jurisdiction over A.M., due to the court's failure to appoint counsel for father despite his numerous requests. (*In re Andrew M.* (2020) 46 Cal.App.5th 859.) The juvenile court reset the section 366.26 hearings after conducting new jurisdiction and disposition hearings in A.M.'s case.

4

***ICWA and Section 306.6 Background***

At the detention hearing in March 2017, father filed an ICWA-020 Parental Notification of Indian Status form indicating he had no Indian ancestry as far as he knew. The court found ICWA did not apply as to father. Mother also filed an ICWA-020 Parental Notification of Indian Status form, which indicated she was or may be a member of, or eligible for membership in, the Tataviam tribe. Mother's counsel told the court he had spoken with the secretary of the tribe, which was in the process of seeking federal recognition, but was not yet a federally recognized tribe. The court ordered DCFS to notice "appropriate federal and tribal agencies of this matter to determine whether or not this case falls under ICWA." DCFS sent notice pursuant to ICWA to the Bureau of Indian Affairs, the Secretary of the Interior, and the tribe.

In April 2017, DCFS interviewed maternal grandmother, who reported she was registered with the tribe. Maternal grandmother told DCFS she had registered E.M. and was waiting to receive his registration number. She also reported mother was not enrolled in the tribe and had not obtained her registration number as an adult. Mother confirmed she was not registered or enrolled.

Attached to A.M.'s section 300 petition was an ICWA-010 Indian Child Inquiry form. The form stated that on July 28, 2017, maternal aunt told DCFS she "will enroll" A.M. in the tribe. The detention report states that on that same date, maternal aunt said "she has registered [A.M.] into the Tataviam tribe."

In September 2017, DCFS filed a jurisdiction and disposition report indicating the Tataviam tribe is not federally recognized. The same month, DCFS provided an ICWA-030 form

5

notice to the Bureau of Indian Affairs, Secretary of the Interior, and Tataviam tribe of the October 2017 jurisdiction and disposition hearings.

In October 2017, DCFS reported it had received a letter from the Tataviam tribe. The letter stated the tribe "is not a federally recognized [t]ribe," but is "state recognized," and the children "are descendants of a member [of] the [t]ribe" and "an individual who is on [the] California Judgment Roll." The letter indicated that while the "minors are not presently enrolled members of the tribe," they could be enrolled with the submission of applications, copies of the minors' birth certificates, and a copy of mother's birth certificate.

At the June 22, 2018 adjudication hearing, a representative from the Tataviam tribe, Pamela Villaseñor, appeared. Due to the illness of minor's counsel, the court continued the hearing to August 1, 2018.

The tribe did not appear at the August 1, 2018, hearing. However, the court continued the proceedings to September 18, 2018, due to court congestion. The court indicated the tribe had asked to participate in the adjudication hearing, so it ordered DCFS to notify the tribe of the new hearing date.[3]

On September 18, 2018, the court again continued the adjudication hearing due to court congestion. The court signed an attorney order requiring DCFS "to notice and provide reports to Pamela Villasenor of the Tataviam Tribe," and to "make best efforts to provide minors' long form birth certificates to Tataviam

---

[3]     It is unclear when or how the tribe made this request. The record does not include any document from the tribe requesting notice or an oral request in any of the transcribed proceedings.

6

tribe."  The court continued the adjudication hearing to November 20, 2018.

On November 20, 2018, DCFS filed a last minute information report indicating that on November 19, DCFS had e-mailed E.M.'s birth certificate and a copy of the detention reports to Villaseñor, and notified her of the hearing scheduled for the next day.  Villaseñor did not appear at the November 20 hearing.  At the hearing, the court concluded ICWA did not apply, but found the children may be eligible for membership in the Tataviam tribe.

In November 2019, Villaseñor appeared in court for the section 366.26 hearing.  She stated her name for the record but did not ask to be heard or make any further statements.  The court continued the hearing to January 24, 2020, and announced that at that time "we should be able to proceed with the legal guardianship."  A tribal representative did not appear at the January 24, 2020, hearing, at which time the court again continued the section 366.26 hearing.

Two years later, in February 2022, the court proceeded with the section 366.26 hearing and ordered legal guardianship as the permanent plan.  The tribe was not present.  The court again found that ICWA did not apply.

Mother timely appealed from the court's February 2022 order.

## DISCUSSION

Mother contends the juvenile court erred in ordering a permanent plan of legal guardianship without first providing notice to the  tribe under section 306.6.  DCFS asserts that mother forfeited this argument by not raising it below.  DCFS also argues section 306.6 does not apply and did not require

7

further notice, and any error was harmless.[4]  We find no error and affirm the order.

## I.    Section 306.6

"Section 306.6 was enacted as a part of a comprehensive reorganization of statutes relating to application of the [ICWA]. [Citation.]  The requirements of the ICWA apply only to federally recognized tribes.  (25 U.S.C. § 1903(8).)  Section 306.6 permits the court in a dependency action to allow a tribe which is not federally recognized to appear in the proceeding and present information to the court."  (*In re A.C.* (2007) 155 Cal.App.4th 282, 286 (*A.C.*).)  Under the statute, a tribe "may" participate in a juvenile dependency proceeding "upon request of the tribe." (§ 306.6, subd. (a).)  The tribe may "upon consent of the court:  [¶] (1) Be present at the hearing.  [¶] (2) Address the court.  [¶] (3) Request and receive notice of hearings.  [¶] (4) Request to examine court documents relating to the proceeding.  [¶] (5) Present information to the court that is relevant to the proceeding.  [¶] (6) Submit written reports and recommendations to the court.  [¶] (7) Perform other duties and responsibilities as requested or approved by the court."  (§ 306.6, subd. (b)(1)–(7).)

Tribal participation under section 306.6 is thus discretionary.  Section 306.6, subdivision (d) explains that the provision "is intended to assist the court in making decisions that are in the best interest of the child by permitting a tribe in the circumstances set out in subdivision (a) to inform the court and parties to the proceeding about placement options for the child

---

[4]    DCFS additionally contends that mother lacks standing to challenge errors in notice to the tribe and the tribe forfeited any opportunity to participate in the proceedings.  Because we affirm on other grounds, we do not reach these arguments.

8

within the child's extended family or the tribal community, services and programs available to the child and the child's parents as Indians, and other unique interests the child or the child's parents may have as Indians."

"By its terms, the statute does not require that any notice be sent to a nonrecognized tribe.  (§ 306.6.)  Further, the statute specifically does not apply either notice provisions found in the ICWA or provisions in state law implementing notice provisions of the ICWA to this situation.  (§ 306.6, subd. (d).)"  (*A.C.*, *supra*, 155 Cal.App.4th at pp. 286–287.)

## II.    Mother Forfeited Her Claim of Error

Mother did not raise any claim of error regarding notice to the tribe in the juvenile court.  At the February 2022 section 366.26 hearing that is the subject of this appeal, she only objected to the plan of guardianship and to monitored visitation.

While a parent may generally raise a claim of insufficient notice to a tribe under ICWA for the first time on appeal (*In re Isaiah W.* (2016) 1 Cal.5th 1, 13–14 (*Isaiah W.*)), mother concedes ICWA is inapplicable here.  However, using ICWA cases as an analogy, she claims that a parent's failure to object to defects in notice under section 306.6 does not forfeit the argument.  We disagree.

In ICWA cases, "the primary parties protected . . . are the Native American tribes . . . .  Thus, the law allows a parent to raise failure to comply with ICWA on appeal, even if the issue was not raised in the trial court, because '[t]he parent is in effect acting as a surrogate for the tribe in raising compliance issues on appeal.'  [Citation.]"  (*In re A.R.* (2022) 77 Cal.App.5th 197, 204.)  However, even in an ICWA case, "[o]nce the child's tribe has appeared and has not asked, on its own behalf, that any prior

9

actions be invalidated, this rationale does not apply. The parent has an independent right to invalidate prior actions, but there is every reason to hold that this can be waived." (*In re S.B.* (2005) 130 Cal.App.4th 1148, 1159 (*S.B.*).)

Even if mother may challenge the lack of notice to a non-federally recognized tribe on appeal—an issue we do not decide—we see no reason to disregard the standard rules of appellate forfeiture in this case. As in *S.B.*, the tribe appeared in the proceedings and has not asked at any point that any prior actions be invalidated. This is not a case in which the tribe failed to receive any notice of the proceedings and was therefore wholly unaware of them. (*Isaiah W.*, *supra*, 1 Cal.5th at pp. 13–14 [tribe's right to intervene or assert jurisdiction over child is " 'meaningless if the tribe has *no notice* that the action is pending' "], italics added.)

" 'As a general rule, a party is precluded from urging on appeal any point not raised in the trial court. Any other rule would permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware. [Citation.]' [Citation.]" (*S.B.*, *supra*, 130 Cal.App.4th at pp. 1158–1159.) Further, "[i]n dependency proceedings, as elsewhere, a litigant forfeits an appellate argument by failing to raise it before the trial court." (*In re D.P.* (2023) 92 Cal.App.5th 1282, 1292.) Mother has forfeited her claim.

## III. Mother Has Not Established Section 306.6 Applies

Even if mother did not forfeit her argument, we would conclude that her claim lacks merit. The parties agree the Tataviam tribe is not a federally recognized tribe and therefore notice to the tribe was not mandated by federal law or state law

applicable in ICWA cases. (*In re K.P.* (2009) 175 Cal.App.4th 1, 6.) Mother instead asserts that notice was required under section 306.6. Because mother has not met her burden of establishing the predicate factual basis for section 306.6 to apply, we reject her claim.

As noted above, section 306.6 applies in "a dependency proceeding involving a child who would otherwise be an Indian child, based on the definition contained in [ICWA], but is not an Indian child based on status of the child's tribe . . . ." (§ 306.6, subd. (a).) ICWA defines " 'Indian child' " as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).)

There is no evidence that either E.M. or A.M. is a member of the tribe. Maternal grandmother said she had "registered" E.M. in April 2017, and maternal aunt said she had or would enroll A.M. in July 2017. However, as of October 2017, the tribe indicated neither child was an enrolled member. While the tribe stated that both children were eligible for enrollment, there is no evidence they subsequently became enrolled members. Similarly, there is no evidence the children are the biological children of "a member of an Indian tribe." (25 U.S.C. § 1903(4).) Maternal grandmother informed DCFS that mother was not enrolled with the tribe and mother confirmed she was not registered or enrolled.[5]

---

[5] We further note that the tribe's letter to DCFS did not indicate that either the children or mother are members of the tribe, despite their lack of enrollment or registration. Instead,

11

Accordingly, mother has not established the children meet the definition of Indian child in Title 25 United States Code section 1903(4), such that section 306.6 applies. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609 ["trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error"].)

## IV. Mother Has Not Shown Prejudicial Error

Finally, even assuming section 306.6 was otherwise applicable, we would find mother has failed to establish any prejudicial error.

Section 306.6 did not mandate notice to the Tataviam tribe of the section 366.26 hearing. (*A.C.*, *supra*, 155 Cal.App.4th at p. 287.) At most, the tribe was permitted to request and receive notice of hearings, with the court's consent. Yet, there is no evidence that the tribe requested any further participation or notice of hearings, other than what it received.

The only indication in the record that the tribe made any request of the court is the court's statement at the continued adjudication hearing on August 1, 2018, that the tribe wanted to participate in the adjudication hearing. The court ordered DCFS to notify the tribe of the continued adjudication hearing, scheduled for November 20, 2018, and DCFS provided notice. When the tribe later appeared before the court on November 26, 2019, it did not request notice of any future hearings, or to otherwise participate in the proceedings.

_____

the letter indicated the children are "descendants of a member in the [t]ribe," and that to enroll the children, the tribe would "need to see linkage of their maternal grandmother [L.G.]."

Mother cites no legal authority to support her claim that DCFS or the court was required to do more than it did to notice the tribe under section 306.6. Indeed, section 306.6, subdivision (d) explicitly states, "This section shall not be construed to make [ICWA], or any state law implementing [ICWA], applicable to the proceedings . . . ." Therefore, as the court in *A.C.* recognized, "It is apparent that in enacting section 306.6, the Legislature had in mind the notice and substantive provisions of the ICWA but specifically chose *not* to require any notice beyond that already required by the ICWA, i.e., notice to federally recognized Indian tribes. It is not our province to insert language into a statute the Legislature chose to omit. (Code Civ. Proc., § 1858.)" (*A.C.*, *supra*, 155 Cal.App.4th at p. 287.) Section 306.6 does not require DCFS or the court to provide notice to a tribe where, as here, there is no evidence the tribe requested notice.

Moreover, mother has not established she (or the tribe) suffered prejudice by any error such that reversal would be warranted. (*S.B.*, *supra*, 130 Cal.App.4th at p. 1162 [harmless error standard applies to review of claims of failure to comply with a state standard above what ICWA requires].) The tribe sent a letter to DCFS and appeared twice before the court. However, the tribe did not provide any information to the court other than how the children could be enrolled. When the tribe appeared in court for the section 366.26 hearing in November 2019, the court announced that it would likely choose guardianship as the permanent plan. The tribe did not object or provide any relevant information to persuade the court otherwise. Over two years later, the court ordered a permanent plan of guardianship.

13

There is no evidence that, at any time, the tribe had information to provide to the court about placement options or programs available to mother or the children.  Further, there is no indication that, had the tribe appeared at the section 366.26 hearing, it would have provided any new or pertinent information to assist the court, or that it would have advocated for a permanent plan other than legal guardianship with the children's relative.  Mother has not established that the lack of specific notice to the tribe of the February 2022 section 366.26 hearing was prejudicial.

## DISPOSITION

The juvenile court order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

EGERTON, J.